**316**

Ronald D. CRAIN, Acting Regional Director of Region 23 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

The FABSTEEL COMPANY OF LOUISIANA.

Civ. A. No. 761109.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Feb. 23, 1977.

Robert G. Levy, II, Acting Regional Atty., Houston, Tex., for plaintiff.

Cecil E. Ramey, Jr., Hargrove, Guyton, Ramey & Barlow, Shreveport, La., Andrew C. Partee, Jr., Kullman, Lang, Inman & Bee, New Orleans, La., for defendant.

OPINION

NAUMAN S. SCOTT, Chief Judge.

The plaintiff, Ronald Crain, Acting Regional Director of Region 23 of the National Labor Relations Board (NLRB), for and on behalf of the NLRB seeks a temporary injunction against the Fabsteel Company of Louisiana (Fabsteel) pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) as amended.

This dispute arises out of the sale of assets by Mosher Steel (Mosher) of its Shreveport plant to Fabsteel, such sale taking place on December 10, 1975, with control of the plant shifting to Fabsteel on January 5, 1976.

On August 30, 1973 a majority of Mosher's employees selected a union for the purpose of engaging in collective bargaining with the company. The NLRB certified the Union on January 18, 1974, as the employees proper representative in all of Mosher's seven plants. In July, 1974, after a series of unsuccessful collective bargaining sessions, the workers at Mosher's Shreveport facility went on strike. At the time of the strike there were approximately 67 employees in the bargaining unit of whom 65 went on strike. Between the beginning of the strike and May 12, 1975, when the Union made an unconditioned offer to return to work on behalf of all strikers, about 20 employees had already crossed the picket line and assumed their employment. Between May 12, 1975 and December 31, 1975, when Mosher operated the Shreveport facility other strikers returned to work if an opening became available. During this time seven strikers were reinstated. The rest of the positions vacated by the strikers on July 12, 1974, had been filled by new employees hired by Mosher to keep its plant operating. Approximately 30 strikers had not been rehired by Mosher as of its termination date for operating the Shreveport plant on December 31, 1975.

As a result of Mosher's conduct during the July, 1974 strike, a complaint was filed against it with the NLRB. The Board's decision, 220 N.L.R.B. No. 47, which was issued on September 16, 1975, found that Mosher Steel had committed various unfair labor practices during that period of the strike in July, 1974. The Board directed that Mosher return all the strikers that had been fired. The Board's decision and order were reviewed and enforced by the Fifth Circuit in June, 1976. However, prior to compliance with the Court of Appeals' order, the sale of Mosher's Shreveport facility was consummated. The Board now seeks a temporary injunction under 10(j) of the Act against Fabsteel, the purchaser of Mosher's Shreveport facility.

■ Section 10(j) of the Act states that: "The Board shall have power, upon issuance of a complaint as provided in sub-

section (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States (including the District Court of the United States for the District of Columbia), within any district where the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

The thrust of a 10(j) injunction is to preserve the status quo as to allow the NLRB an opportunity to pass on questions arising under the Act which Congress specifically designated them to handle. *Boire v. International Brotherhood of Teamsters, etc.*, 479 F.2d 778 (5th Cir. 1973); *NLRB v. Denver Building & Construction Trades Council*, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

■ The Fifth Circuit applies a two-prong test in deciding whether an injunction will issue. First, drawing upon the words "just and proper" of the Act, there must be a showing that the injunction is equitably necessary, and, second, there must be reasonable cause to believe unfair labor practices are taking place. See *Boire v. International Brotherhood of Teamsters, etc., supra*. Both prerequisites must be shown before the court can order the injunction.

The standard which is derived from the words "just and proper" has been declared "unquestionably vague" and the circuits have been unclear in determining the degree of equitable need that must be shown for an injunction to issue. *Boire v. International Brotherhood of Teamsters, etc., supra*.

■ It is our opinion that the first prong of the test is not met by the NLRB, that is, the issuance of an injunction is not just and proper, and therefore we do not need to

decide whether there is reasonable cause to believe an unfair labor practice was committed by Fabsteel.

 The purpose of the 10(j) injunction is to preserve the status quo. The status quo at the time Fabsteel purchased Mosher's Shreveport facility is essentially preserved now. When Fabsteel purchased the plant it hired substantially all workers who were on the payroll when Mosher closed its books at the plant on December 31, 1975. A purchaser of assets, as Fabsteel is in this case, has the undisputed right to fire or hire any number of the previous employees of Mosher. *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), and *NLRB v. Burns Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) firmly establish this principle. An injunction issued here will force Fabsteel to fire approximately 30 employees and hire the strikers who were fired by Mosher who were never employees of Fabsteel and who have never had or asserted any rights against Fabsteel. The status quo the NLRB seeks is therefore one which existed when Mosher owned the Shreveport plant, but not Fabsteel. Indeed, if the NLRB rules (1) that Fabsteel is a successor employer (2) that the same collective bargaining unit that existed when Mosher Steel owned the plant, is applicable to Fabsteel's plant, and (3) that Fabsteel, a purchaser of assets with an outstanding Board order, has committed unfair labor practices; it then may order Fabsteel to hire the strikers and fire whomever is necessary to make room for the "new" employees. However, all of the above are difficult and involved questions of labor law which are, and should be, left to the NLRB to decide and the appellate courts to review. Our failure to issue the injunction is not so severe a denial of a remedy that the NLRB is powerless to act. When these questions arise before the Board the status quo when Fabsteel purchased the plant will be preserved. Failure to issue this injunction does not fail to preserve the Board's jurisdiction over this matter.

However, there are further reasons why issuing such an injunction would not be just and proper under the circumstances. If the court wrongly issues an injunction, a substantial (approximately 30) number of people will be mistakenly thrown out of work until the Board acts and this injunction is dissolved. This would wreck havoc and chaos in the lives of such unoffending individuals and the plant. But if the court fails to issue the injunction and the Board and appellate courts disagree, the strikers will be returned to work, and will still have their remedies of back pay and restored seniority in the plant. A fine line must be drawn here. We feel that these additional factors compel denial of the injunction. See *Boire v. International Brotherhood of Teamsters, etc., supra*.

For the foregoing reasons, the NLRB's request for an injunction pursuant to Section 10(j) of the Act is hereby DENIED.