Curtis L. MACK, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AIR EXPRESS INTERNATIONAL, Respondent.

Civ. A. No. 78–1667A.

United States District Court, N. D. Georgia, Atlanta Division.

March 8, 1979.

Paul K. Tamaroff, N. L. R. B., Atlanta, Ga., for petitioner.

Guggenheimer & Untermyer, New York City, Elarbee, Clark & Paul, Atlanta, Ga., for respondent; Jerold D. Jacobson, Fred Kolikoff, Legal Asst., Theodore D. Kaufman, New York City, David M. Vaughn, Atlanta, Ga., of counsel.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought by the regional director of the National Labor Relations Board ["NLRB"] pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), for temporary injunctive relief pending a final decision by the NLRB on unfair labor practices charges filed against Air Express International ["AEI"]. The petition came on for an evidentiary hearing on September 15, 1978. The parties then filed briefs referencing testimonial and documentary evidence introduced before the Administrative Law Judge on the unfair labor practices charges and submitted written argument supporting or opposing imposition of a preliminary injunction. The court will begin our review of the request for an injunction with a brief statement of the factual background and party contentions in this action.

Defendant AEI operates an air freight forwarding business which maintained an office in East Point, Georgia, in 1977. The East Point facility handled international forwarding. In July 1977, five of six of the East Point employees elected Truck Drivers and Helpers Local Union No. 728 of the International Brotherhood of Teamsters as their bargaining representative. On December 14, 1977, the NLRB certified Local No. 728 as the exclusive bargaining representative for a bargaining unit defined as:

all dockmen, drivers and agents employed by the Employer at its operation at 1165 Willingham Drive, East Point, Georgia, but excluding all sales personnel, confidential employees, professional employees, guards and supervisors defined in the Act.

Petitioner's Exhibit No. 3, at 2.

In the meantime, on October 19, 1977, the defendant entered into an agreement to purchase the air freight forwarding business of Trans-Air Freight System, Inc. Trans-Air maintained facilities in fifteen cities in the United States, including College Park, Georgia. The local Trans-Air office engaged in domestic rather than international services through the Atlanta airport. In preparation for the take-over, defendant AEI immediately entered into employment contracts with certain Trans-Air supervisory personnel including Robert Heney and Anthony Chaffin. The take-over was effected throughout the country on February 10, 1978. The East Point employer and the union met prior to the take-over in an attempt to negotiate employment in the newly-acquired College Park facility. The negotiations broke down soon after they were convened. All Trans-Air employees were retained at the College Park facility. Of the six employees in the AEI East Point bargaining unit, Kathy Lee was retained as a customer service agent and John Moore was hired in a supervisory capacity (and thus removed from the bargaining unit) for the College Park facility. Ms. Lee had been identified as the lone dissenter to union representation in the East Point election. The other four employees in the bargaining unit were discharged. In the fourteen other cities across the country affected by the take-over, no AEI employees were dismissed.

Two unfair labor practices charges have been filed by the union with the NLRB. The first, on August 31, 1977, charged: (1) that the AEI East Point District Manager threatened to freeze all pay raises during the union organizational efforts; and (2) that AEI discharged one East Point employee for engaging in union activities,[1] in

---

1. Respondent discharged employee Nella Ree Dunn in July 1979, just prior to the election of Local 728 as the exclusive bargaining representative for the unit. Respondent contends Dunn's dismissal was prompted by her disclosure of confidential wage information. The petitioner characterizes such disclosure as federally protected activity, see 29 U.S.C. § 157.

violation of 29 U.S.C. § 158(a)(1) and (3). On April 4, 1978, a second unfair labor practices complaint issued, charging the employer with: (1) interrogating employees with regard to their union membership and activities and their cooperation with NLRB investigations; (2) threatening employees with discharge for engaging in union activities; (3) appearing to conduct a surveillance of employees' union activities; (4) soliciting employees to refuse to cooperate with NLRB investigators; (5) threatening not to hire anyone involved in union activities; (6) promising pay increases if employees agreed to cease union activities; (7) discharging employees Lynn Ashmore, John Moore, Marlin Rozier, John Shepard, and James McCullom for participating in union activities and for testifying to NLRB agents; (8) refusing to bargain collectively with the union; and (9) withdrawing recognition of the union as the exclusive bargaining representative of all unit employees. These allegations, if proven, would constitute violations of 29 U.S.C. § 158(a)(1), (3), (4) and (5). An Administrative Law Judge convened an evidentiary hearing on these charges but no findings of fact have been recorded and no decision has been rendered to date.

The NLRB seeks in this petition to have the court impose an interim injunction pending entry of the Administrative Law Judge's findings, a decision by the NLRB, and enforcement, if warranted, by the Court of Appeals. Petitioner asks the court: (1) to enjoin AEI's continued and future unfair labor practices; (2) to cause reinstatement of discharged AEI employees; and (3) to order AEI to bargain in good faith with the union upon request.

## SECTION 10(j) RELIEF

■ Section 10(j) was added to the National Labor Relations Act, 29 U.S.C. § 160(j), in 1947 as it became obvious while an unfair labor charge ground slowly through the NLRB routine, from issuance of an unfair labor complaint, to hearing before an Administrative Law Judge, to de novo hearing before the Board, and finally enforcement by the Court of Appeals, that an employer or union could continue to violate the Act with impunity. At the end of the lengthy routine and continued violations, any available remedy might be "meaningless or so devoid of force that remedial purposes of the Act would be frustrated." *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1192 (5th Cir. 1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). For example, the union might have disbanded or the employer might have been forced out of business or succumbed to the purported representative's demands, before a decision could be returned. Section 10(j) was thus a means of preserving the *status quo* pending final decision and enforcement and of protecting the NLRB's jurisdiction and processes. *Id.; Boire v. International Brotherhood of Teamsters,* 479 F.2d 778 (5th Cir. 1973); *McLeod v. General Electric Co.,* 366 F.2d 847 (2d Cir. 1966), *vacated as moot,* 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967).

■ The NLRB's recourse to the courts during the pendency of unfair labor practices proceedings is the sparing exception rather than the rule, *Minnesota Mining & Manufacturing Co. v. Meter,* 385 F.2d 265, 269 (8th Cir. 1967), and the courts' consideration of such petitions differs from that given requests for injunctions in private litigation. The Courts of Appeal have created a two-prong test for application of this extraordinary relief. The NLRB must demonstrate: first, that "reasonable cause" exists for believing that the defendant has committed an unfair labor practice, and, second, that "equitable necessity" demands allowance of interim relief. *Boire v. Pilot Freight Carriers, Inc., supra,* at 1188–89. The burden of demonstrating reasonable cause has been described as "relatively insubstantial," *Hirsch v. Building & Construction Trades Council,* 530 F.2d 298, 302 (3d

---

Because Ms. Dunn was a confidential employee and thus not a member of the bargaining unit, her discharge is not pursued as an unfair labor practice herein but is offered as evidence of the employer's union animus.

Cir. 1976), and has been satisfied upon a showing that the Board's legal theory for the unfair labor practices charge was not frivolous, *Boire v. International Brotherhood of Teamsters, supra,* at 789. Equitable necessity, the second part of petitioner's proof, is more problematic. The NLRB must show that failure to maintain the *status quo* will render any later action by the Board meaningless and thus defeat the purposes of the National Labor Relations Act. *Id.* at 788.

## REASONABLE CAUSE

The court finds and concludes that the NLRB has established reasonable cause to believe that the charged unfair labor practices have occurred and that such charges are grounded upon substantial theories of law. *Id.,* at 789. The respondent has made no direct attempt to counter petitioner's proof of reasonable cause in its post-hearing motion to dismiss the injunction request.[2] This strategy may reflect recognition of the minimal burden of proof exacted of the petitioner in this request. *Boire v. Pilot Freight Carriers, Inc., supra,* at 1189.

AEI has been charged: with interfering, restraining, or coercing employees in the exercise of their federally protected organizational rights, 29 U.S.C. § 158(a)(1); with discriminating in regard to hire or tenure in order to discourage union membership, 29 U.S.C. § 158(a)(3); with discharging or otherwise discriminating against employees who have given testimony under the Act, 29 U.S.C. § 158(a)(4); and with refusing to bargain in good faith with the duly-elected representative of the employees, 29 U.S.C. § 158(a)(5). Petitioner has directed the court to selected portions of the administra-

tive hearing evidence in support of the charges.

The first excerpt is taken by petitioner from an employee's description of a January 1977 meeting of AEI district manager Frank O'Rorke, Trans-Air supervisor Robert Heney,[3] and the College Park Trans-Air employees who are now AEI employees. The AEI manager is reported to have warned that:

> some of the employees at AEI had signed cards and that he [O'Rorke] did not want us to sign cards—did not want us to sign cards, that it was possible for us to have the same benefits as far as salary without having to join a union. . . .

Testimony of Michael Turner, at Tr. 1100. Again in January 1978, Anthony Chaffin, a Trans-Air supervisor then under an employment contract with AEI to remain at College Park as a supervisor, met with two College Park employees:

> He [Chaffin] told us it was his job to keep us from joining the Union.
>
> .    .    .    .    .
>
> [H]e told us that the [East Point employees] had already signed cards and tried to join a Union or something.
>
> .    .    .    .    .
>
> He called me on the phone one night, wanted to talk to me. Asked me if I had a Union card. I told him yes I did and he acted kind of startled and said well you know if any one of you has a Union card we'll have to fire all four drivers .    ..

*Id.* at 1107. A September 9, 1977 inter-office memorandum from East Point District Manager Frank O'Rorke to a Mr. Pschirer is of a similar vein. The text of the memo,

---

**2.** The respondent has, however, stated that the two supervisors alleged to have coerced, harassed, and intimidated the employees in their organizational efforts, have been removed from the Atlanta AEI facilities. One has been transferred to another region and the other has been reassigned to a special project.

**3.** The petitioner argues that AEI and Trans-Air shared an identity of interest once the purchase agreement was signed. Sharing such a relationship arguably renders AEI responsible for

the direction and control of two Trans-Air supervisors, Robert Heney and Tony Chaffin, during the October 1977 to February 1978 takeover planning stage. The improper actions of these supervisors then may be charged as AEI's unfair labor practices. The court will leave the final determination of identity of interest to the NLRB but will accept the petitioner's arguments of the effect of this relationship in evaluating the petitioner's reasonable cause to believe a violation has been committed.

which was admitted into evidence at the administrative hearing, reads:

> It has been suggested by our attorneys here in Atlanta that we review Kathy Lee for her 6th month pay adjustment. This suggestion was made based on the idea that the Union's position here in the Atlanta station will be weakened and the process of ratification will be deterred.

Petitioner's Exhibit No. 8. *See also* testimony of Martin Hoffenberg, at 2881–83 (employees classified as activist, neutral, or opposed to unionization in determining which would be retained after the AEI and Trans-Air merger). Further, evidence was adduced to show that Respondent's East Point supervisor had questioned the bargaining unit employees about whether they had been subpoenaed and would testify in the investigation of the pertinent unfair labor practices charges. Testimony of John Shepherd, at 1042. Finally, evidence of early undisclosed decisions of which AEI personnel would be retained was introduced in an attempt to prove that the employer came to the bargaining table, at a later time, with a fixed position on College Park employment rather than with a readiness to negotiate in good faith. Testimony of Lynda Molander, at 814–16. These few of the many incidents selected by the petitioner establish the requisite reasonable cause to believe that unfair labor practices have been committed. *See* 29 U.S.C. § 158(a)(1), (3), (4), and (5). Petitioner has satisfied the first part of this circuit's two part proof in a section 10(j) injunction request.

### EQUITABLE NECESSITY

Petitioner urges that an injunction (i) restraining further unfair labor practices, (ii) reinstating discharged employees, and (iii) compelling bargaining upon the union's request, would be "just and proper" under the circumstances presented, 29 U.S.C. § 160(j). Respondent opposes any injunction, but concedes that if one must be imposed, a prohibitory injunction, proscribing future unfair labor practices would suffice.

■ The appropriateness and scope of an injunction under 29 U.S.C. § 160(j) may be measured by the need to maintain the status quo, to preserve the jurisdiction of the NLRB, and to foster the purposes of the federal labor laws. *Boire v. Pilot Freight Carriers, Inc., supra* at 1188; *Wilson v. Milk Drivers & Dairy Employees Union,* 491 F.2d 200, 203 (8th Cir. 1974). The status quo sought is the "last uncontested status which preceded the pending controversy." *Minnesota Mining & Manufacturing Co. v. Meter,* 385 F.2d 265, 273 (8th Cir. 1967). The traditional rules of equity do not govern but may assist an evaluation of petitioner's request for relief. The three requested forms of a preliminary injunction will be reviewed upon these principles.

■ First, petitioner seeks to enjoin the alleged continued and future unfair labor practices of the respondent. Although any additional unfair labor practices may be separately pursued through the established NLRB procedures, imposition of an injunction adds to these procedures the court's power to penalize contempt. *Boire v. Pilot Freight Carriers, Inc., supra,* at 1193. Upon petitioner's showing and respondent's failure of proof, the court will impose a preliminary injunction against future violations of 29 U.S.C. § 158(a)(1), (3), and (4). The respondent shall neither intimidate, suppress, nor penalize any employee's exercise of his federally-guaranteed organizational rights.

In addition, based upon the undisputed evidence of the employer's supervisors' anti-union sentiment, the court concludes that a clear statement of employees' rights should accompany this interim injunction, in order to reestablish a more union-neutral employment climate. The court will permit petitioner to distribute to AEI's Atlanta employees and to post on employee bulletin boards a written statement of the employees' federally-declared rights:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protec-

tion, and shall also have the right to refrain from any or all of such activities

. . . . .

29 U.S.C. § 157. The petitioner may add to this statement a note that employees may contact petitioner's regional office for assistance with any questions or complaints.

Second, the petitioner seeks reinstatement of the five East Point employees who were discharged or otherwise removed from the bargaining unit at the time of the AEI and Trans-Air merger. The five employees in question are all currently employed: John Moore was hired by the respondent for the College Park facility as a supervisor (and as such is ineligible to participate in a bargaining unit of employees); James McCullom works for a truck owner-operator doing the same work he performed for AEI but for lower wages and fewer benefits; Jon L. Ashmore is employed as a gas station attendant; Marlin Rozier has a job with a competitor air freight forwarding service; and John Shepherd is on the payroll of the Southern Railroad. The petitioner argues that it is respondent who created this problem and therefore it is respondent who should bear the burden of accommodation pending the outcome of the unfair labor practices charges.

While petitioner seeks to have the five reinstated, respondent contends reinstatement will cause five other employees to be laid off as the College Park facility is presently fully staffed. It is argued that although the alleged discriminatees will be able to recover back pay upon a finding and enforcement of an unfair labor practice, the present employees will have no such recourse if they are replaced and the opposite finding is returned.

■ The court concludes that the requested reinstatement is not equitably necessary under the circumstances presented. In order to recreate the *status quo ante* the court would have to reestablish the conditions existing just prior to February 10, 1978, the date of the take-over of Trans-Air. The lapse of one year since the take-over date makes any recreation of the *status quo ante* most difficult. *Angle v. Sacks,* 382 F.2d 655, 659 (10th Cir. 1967). A final decision by the NLRB will be effective and meaningful in the cases of the five individual discriminatees. Admittedly any organizational efforts may remain temporarily stymied by denial of interim reinstatement, but the probability of stalling such efforts evaluated against the potential losses to innocent bystanders, the present employees, suggests the more conservative course of action. *See Crain v. Fabsteel Co.,* 427 F.Supp. 316 (W.D.La.1977) (present employees need not be discharged pending NLRB decision of whether predecessor employer had improperly discriminated against certain striking workers). Petitioner has argued that few if any lay-offs will be occasioned by reinstatement but has failed to explain how this will be possible if respondent in fact has the full complement of workers it claims. The court will not precipitously upset the present employment status in anticipation of the NLRB's rulings. The discriminatees will have ample recourse if their speculation is later affirmed by the NLRB. The court therefore will not order the interim reinstatement of the five affected employees.

■ Third, the petitioner seeks an order compelling respondent to bargain in good faith with Local 728 upon the union's request. The court will deny this third aspect of petitioner's request. The current representative status of the union is open to question. Although the union was duly elected by the East Point employees and was certified by NLRB to represent a unit of AEI's employees, the previous employee electorate has now been removed from a bargaining unit which may or may not continue after the merger. The difficult questions of current representativeness of the union and vitality of the bargaining unit after the take-over, *see NLRB v. Burns International Security Services,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d C (1972), must be left for the NLRB's expert review. The district court need not and should not hazard an answer to the complex questions which fall squarely within the Board's jurisdiction and experience. *See Boire v. Inter-*

*national Brotherhood of Teamsters, supra,* at 789.

Denying a mandatory injunction to bargain collectively may delay the exercise of the employees' rights guaranteed by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, if the NLRB ultimately finds unfair labor practices by the employer, continued representativeness of the union, and unchanged status of the bargaining unit. The injunction against future unfair labor practices and the statement of employee rights are intended to ease such a delay. On the other hand, if the NLRB should render the opposite decision and if bargaining were compelled herein, the present employees might be denied their Section 7 rights. Either course threatens an unjust denial of rights. The district court will not leap to action in light of such uncertainty, but will abstain in favor of the NLRB's expertise, *Boire v. International Brotherhood of Teamsters, supra,* at 789, with the understanding that the NLRB has the authority to advance a determination on the merits where warranted, *Johnston v. J. P. Stevens & Co.,* 341 F.2d 891, 892–93 (4th Cir. 1965).

Accordingly, the court hereby GRANTS IN PART and DENIES IN PART petitioner's request for preliminary injunctive relief. The petition is GRANTED in accordance with the terms of this order insofar as it seeks to enjoin future unfair labor practices; and is DENIED insofar as it seeks temporary reinstatement of employees Moore, McCullom, Ashmore, Rozier, and Shepherd, and insofar as it seeks to compel the employer to bargain collectively with Local Union No. 728. This order constitutes the final judgment by the court in this action.

IT IS SO ORDERED.