Emil C. FARKAS, Director of Region 9 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO and its affiliate Local No. 3-689, Respondents.

Civ. A. No. C-2-76-681.

United States District Court, S. D. Ohio, E. D.

Oct. 7, 1976.

Edward C. Verst, N. L. R. B., Cincinnati, Ohio, for petitioner.

David Clayman, Columbus, Ohio, for respondents.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

The Director of Region 9 of the National Labor Relations Board has petitioned this Court for injunctive relief pursuant to § 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(*l*). The petition follows the August 31, 1976, filing by Goodyear Atomic Corporation of charges with the N.L.R.B. alleging that the respondents herein, Oil, Chemical and Atomic Workers International Union, and Local No. 3–689 of that labor organization, are engaged in picketing activities prohibited by § 8(b)(4)(i) and (ii)(B) of the Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(B). A hearing was held concerning the petition, at which time the Court received evidence from both petitioner and respondents.

■ Because the injunction sought here is a creature of the statute, the normal standards governing the issuance of such extraordinary relief are not applicable. The issue presented by the petition has been framed as follows by one court, *Kaynard v. Independent Routemen's Association*, 479 F.2d 1070, 1072 (2d Cir. 1973) (citation omitted):

It is beyond any question that the role of a district court in a Section 10(*l*) proceeding is not to adjudicate the merits of the alleged violation, but rather to decide whether the Regional Director had reasonable cause to believe that the respondent had violated the Act. Reasonable cause has been interpreted to mean that there must be a "reasonable possibility" that the Board will sustain the unfair labor practice charge.

■ Members of the respondent union local perform production and maintenance work at the Portsmouth Gaseous Diffusion Plant, Piketon, Ohio, which is operated by their employer, Goodyear Atomic Corporation, under a contract with the United States Energy Research and Development Administration. The plant produces enriched uranium (U235) for civilian and military use. The collective bargaining agreement between the union and Goodyear Atomic Corporation contains a wage reopener clause, and since August 27, 1976, the local has been engaged in a lawful work stoppage at the plant.

Since 1971, Goodyear Atomic Corporation has entered into a number of agreements with outside contractors concerning major plant modifications designed to increase the productivity of the Portsmouth facility. When the work stoppage commenced in August, General Atomic Corporation closed two of the four entrances to the plant, and designated the remaining entrances for the exclusive use of its union employees and its outside contractors, respectively. Members of the local have not limited their picketing activities to the primary gate, but have picketed the reserve gate as well. The Regional Director contends that he has reasonable cause to believe that Goodyear Atomic Corporation has established the reserve gate in accordance with applicable law, and that picketing at this gate therefore constitutes an unfair labor practice under 29 U.S.C. § 158(b)(4)(i) and (ii)(B).

At the hearing held in this cause, respondents indicated that the factual dispute involved here concerns only the second element of the reserve gate test adopted by the Supreme Court in the General Electric

case, namely, the requirement that "the work done by the men who use the [reserve] gate must be unrelated to the normal operations of the employer." *Local 761, International Union of Electrical, Radio & Machine Workers, AFL–CIO v. N.L.R.B.*, 366 U.S. 667, 681, 81 S.Ct. 1285, 1293, 6 L.Ed.2d 592 (1961). Respondents contend that much of the work for which Goodyear Atomic Corporation has engaged outside contractors has, in the past, been performed by its own employees. In short, they claim that the use of the reserve gate has been a mingled one, 366 U.S. at 682, 81 S.Ct. 1285, because employees of the independent contractors are performing work which conventionally has been done by the maintenance and production work force.

The Court is of the opinion, and so holds, that the Regional Director has amply demonstrated the reasonableness of his belief that the independent contractors are not engaged in such conventional maintenance and production work. The Regional Director has drawn a distinction between work performed to repair and maintain existing plant facilities, and work performed to expand those facilities for increased production purposes. This distinction is no more or less than a common sense distinction between maintenance and construction work. The Court cannot hold it unreasonable as a matter of law.

The Court further finds that the Regional Director has reasonable cause to believe that the remaining elements of the General Electric test are present here. There is evidence that the reserve gate is adequately marked and set aside from the primary gate, and that if the plant were engaged in normal operations, the work of the independent contractors would result in no more than a de minimus curtailing of those operations. I conclude that injunctive relief against the respondent local, if properly conditioned, would be just and proper under the circumstances. Since petitioner presented no evidentiary basis for a finding that he has reasonable cause to believe that the respondent international union has participated in or encouraged any unfair labor practice, the Court will not issue injunctive relief against this respondent.

It is ORDERED, ADJUDGED and DECREED that Local No. 3–689 of the Oil, Chemical and Atomic Workers International Union, AFL–CIO, its officers and members, be and they hereby are enjoined from picketing the north entrance of the Portsmouth Gaseous Diffusion Plant, Piketon, Ohio, or its environs, or access roads thereto, and are further enjoined from impeding or interfering in any way with the use of such entrance, environs or access roads by persons, or employees or suppliers of persons, under contract with Goodyear Atomic Corporation. Picketing or other union activity at any entrance other than the north entrance is not affected by this injunction. This injunction will take effect and remain in effect only if and so long as Goodyear Atomic Corporation takes reasonable precautions to insure that the north entrance of such plant is used exclusively by its independent contractors and their employees and suppliers, and not by employees of Goodyear Atomic Corporation. Further, this injunction will remain in effect only until such time as the National Labor Relations Board finally adjudicates the unfair labor practice charges filed against respondent by Goodyear Atomic Corporation on or about August 31, 1976.

No security is required of petitioner.