Michael A. TAYLOR, Regional Director of the Thirty-Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

CIRCO RESORTS, INC., d/b/a Circus Circus, Respondent.

Civ. No. R–78–148–HEC.

United States District Court,
D. Nevada,
Civil Division.

Oct. 11, 1978.

Charles A. Askin and Alan R. Berkowitz, N. L. R. B., Oakland, Cal., for petitioner.

Kevin C. Efroymson, Las Vegas, Nev., for respondent.

## DECISION

CLAIBORNE, District Judge.

This matter is before the Court on a Petition filed by the Regional Director of the Thirty-Second Region of the National Labor Relations Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended, [29 U.S.C. § 160(j)] for a preliminary injunction pending the final disposition of the case designated as Case No. 32–CA–1069 now pending before the Board.

On July 12, 1978 International Alliance of Theatrical Stage Employees 363, filed a complaint with the National Labor Relations Board (hereinafter called NLRB) alleging that Circo Resorts, Inc. had violated certain provisions of the National Labor Relations Act (hereinafter called NLRA). After amending its complaint three times, the Union, in its final complaint filed August 17, 1978, charged that Circo Resorts, Inc. had violated § 8(a)(1) and § 8(a)(3) of the NLRA.

Following an investigation, the NLRB pursuant to § 10(b) of the NLRA, issued a complaint charging that Circo Resorts has and is violating §§ 8(a)(1) and 8(a)(3) of the NLRA.

Pursuant to § 10(j) of the NLRA, Michael A. Taylor, Regional Director of the Thirty-Second Region of the NLRB, filed a Petition with this Court on September 13, 1978. In this Petition the Regional Director asked this Court to issue a temporary injunction ordering the Respondent to:

1. Cease and desist from:

(a) Discharging employees because they support the Union or engage in other protected concerted activities for the purpose of collective bargaining or other mutual aid or protection.

(b) Interrogating employees concerning employee membership in, or activities on behalf of the Union.

(c) Telling employees it cannot grant planned wage increases if they support the Union.

(d) Threatening employees with a reduction in wages if they support the Union.

(e) Threatening the employees with a reduction of the work crew if they support the Union.

(f) In any like or related manner, interfering with, restraining or coercing employees in the exercise of the rights guaranteed them in Section 7 of the Act.

2. To direct Respondent to:

(a) Offer those employees, Tom Sorce and Alan Bledsoe reinstatement to the positions said employees held at the time of their discharge with wage and fringe benefit levels computed as if they had not been so discharged.

(b) Recognize and bargain collective in good faith with the Union regarding wages, hours and other terms and conditions of employment as the majority representative of the employees of Respondent in the appropriate unit described.

The standard which district courts use in determining whether to grant temporary injunctive relief under § 10(j) of the NLRA is a two-step test. First, this Court must determine whether there is reasonable

cause to believe that unfair labor practices have been committed. Second, this Court must determine whether the specific relief requested by the Regional Director is "just and proper" as required by the statute. *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 36, 37 (2nd Cir. 1975); *McLeod v. National Maritime Union,* 457 F.2d 1127, 1138 (2nd Cir. 1972); *Angle v. Sacks,* 382 F.2d 655, 658 (10th Cir. 1967).

▮ In determining whether there is reasonable cause to believe that an unfair labor practice has been committed, this Court must ascertain whether the NLRB could reasonably find that Respondent committed the alleged unfair labor practices. Questions of credibility are for the NLRB to determine. *Jaffee v. Henry Heide, Inc.,* 115 F.Supp. 52, 57 (S.D.N.Y.1953). Although there are disputed issues of fact, the Regional Director should be given the benefit of the doubt. *Seeler, supra.*

In the case before this Court, the Regional Director argues that Tom Sorce and Alan Bledsoe were discharged because of their union activities, while the Respondent claims that the two employees were laid off due to a reduction in force.

According to the affidavit of Joe Hulsey, Entertainment Director for Circo Resorts, Alan Bledsoe was selected to be laid off because he was the last man hired. Tom Sorce was selected as the second person to be laid off because Mr. Sorce was the next to last person hired in Reno, was paid more money than anyone else on the stage crew, and was overqualified for the job. The affidavit of Alvin Davis, the Stage Manager in Reno, corroborates that of Joe Hulsey. In it Alvin Davis says that he had a discussion with Joe Hulsey on July 8, 1978 during which they agreed to implement the reduction in force by laying off Alan Bledsoe and Tom Sorce on July 9th.

In contrast, however, according to the affidavits of Alan Bledsoe and Tom Sorce, Alvin Davis told them they were being terminated because they were too obvious about their union activities.

It is also in dispute in this case whether Alvin Davis expressed an opinion as to what would occur if a union were voted in. In his affidavit, Alvin Davis says that he never told Dan Pniak, Eric Powers or any other employees that the hotel would let some people go or would cut wages if there was a vote taken in favor a union. Davis did say that he had a conversation with Dan Pniak concerning the Union during which he expressed the opinion that it was too early to consider a union at the hotel. However, Dan Pniak's testimony in his affidavit refutes that of Alvin Davis. Dan Pniak claims that on July 8, 1978 Mr. Davis told him that if the vote was in favor of a union, some employees would have to be let go.

▮ As the affidavits indicate, there are factual disputes in the case before this Court. In a § 10(j) proceeding, however, it is not this Court's duty to resolve these disputes. If they are resolved in favor of the Regional Director, the NLRB could reasonably find that the Respondent has committed the alleged unfair labor practices. It follows that this Court has reasonable cause to believe that unfair labor practices have been committed.

▮ Now this Court must ascertain whether the relief sought by the Regional Director is "just and proper". In discussing the considerations that a court should take into account when granting relief pursuant to § 10(j), the court in *Squillacote v. Local 248, Meat & Allied Food Workers,* 534 F.2d 735, 744 (7th Cir. 1976) said:

"It is difficult, if not impossible, to articulate a universally applicable standard; nevertheless, it is clear to us that courts should consider such factors as the need for an injunction to prevent frustration of the basic remedial purpose of the act and the degree to which the public interest is affected by a continuing violation as well as more traditional equitable considerations such as the need to restore the status quo ante or preserve the status quo."

Of these factors, preservation of the status quo is the most important that this Court must consider. *McLeod, supra; Fuchs v.*

*Steel-Fab, Inc.,* 356 F.Supp. 385 (D.C.Mass. 1973).

The Regional Director in this case asks for three different forms of temporary relief: (1) an order requiring the Respondent to cease and desist from engaging in the alleged unfair labor practices, (2) reinstatement of Tom Sorce and Alan Bledsoe to the positions they held at the time of their discharge with wage and fringe benefit levels computed as if they had not been discharged, and (3) an order requiring the Respondent to bargain collectively with the International Alliance of Theatrical Stage Employees.

As to the first request, the Regional Director is essentially asking this Court to enjoin the Respondent from violating the law. Although such an order appears to be superfluous, it does protect the interests of the employees since the Respondent can be held in contempt for a violation of this order. See *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1193 (5th Cir. 1975). In addition, such an order helps restore the parties to the status quo before the alleged unfair labor practices occurred.

Therefore, the request for a cease and desist order pending final determination by the NLRB is granted.

Now as to the second request for reinstatement of Tom Sorce and Alan Bledsoe. Reinstatement is a permissible exercise of this Court's jurisdiction if such relief will help restore the conditions prevailing before the discharges. See *Angle v. Sacks, supra,* p. 661. In order to restore the parties to the status quo before the alleged unfair labor practices took place, it is necessary to reinstate Tom Sorce and Alan Bledsoe.

In their brief the Respondents claim that if Tom Sorce and Alan Bledsoe are reinstated, two other stage maintenance employees would have to be laid off. In *Seeler v. Trading Port, Inc.,* 88 LRRM 3293 (N.D.N.Y.1974), which is cited by the Respondents, the court felt that it would be inappropriate to compel the hiring of unnecessary workers, especially when it would result in the discharge of employees working since the strike. In that case the hearing had already been held before the NLRB and the district court had before it the transcripts from that hearing. The record showed that during the strike some of the employer's customers went elsewhere, that the strike coincided with an increase in the costs of truck rental because of the energy shortage, that the employer terminated certain delivery services, and that the employer withdrew from highly competitive, low profit or non-profit areas of business activity. Based upon this evidence the court was satisfied that the employer did not need additional employees.

In the present case the testimony in the affidavits is conflicting. Joe Hulsey claims that the stage crew is large enough and that if reinstatement is ordered, two other employees will be laid off. Alvin Davis agrees that the crew presently has enough personnel. However, Dan Pniak, Eric Powers, and John South, three employees who are still in the stage crew, all say that since the layoffs the crew is understaffed. The evidence in this case showing that the Respondent needs no additional employees is not as substantial as in *Seeler v. Trading Port, Inc.,* 88 LRRM 3293 (N.D.N.Y.1974), and it is not sufficient to warrant denying reinstatement.

The Respondent has also cited *Crain v. Fabsteel,* 427 F.Supp. 316 (D.C.La.1977), another case in which reinstatement was denied. In that case, Mosher Steel sold its Shreveport, Louisiana facilities to the Respondent Fabsteel. Prior to the sale, workers at Mosher's Shreveport plant went on strike. As a result of Mosher's conduct during the strike a complaint was filed with the NLRB. The Board found that Mosher had committed various unfair labor practices and directed that Mosher reinstate the strikers who were fired. The findings of the NLRB were reviewed and enforced by the Fifth Circuit. However, prior to compliance with the Fifth Circuit's Order, the sale was consummated. The Board in that case sought a § 10(j) temporary injunction against Fabsteel. Because of the rights and obligations of a successor employer the court noted that the status quo that had to

be preserved was when Fabsteel purchased Mosher's facilities, not the status quo when Mosher owned the plant. By denying reinstatement, the status quo when Fabsteel purchased Mosher's facilities was preserved.

In the case before this Court, it is the status quo before the alleged unfair labor practices took place that must be preserved. Reinstatement of the discharged employees will restore that status quo.

■ In his Petition the Regional Director requested "reinstatement to the positions said employees held at the time of their discharge with wage and fringe benefit levels computed as if they had not been so discharged". It is not clear from this language whether this is a request for back pay in addition to reinstatement. If it is, the request is denied. § 10(j) empowers this Court to grant "appropriate temporary relief or restraining order". Back pay is a form of final relief and it should be for the NLRB to decide whether it is appropriate in this case. However, the two discharged employees should be reinstated at the wage and fringe benefit levels that they would now be at if they were not laid off.

The request for reinstatement is granted.

■ Now as to the request for a bargaining order. In cases such as this one, when there have been no bargaining relations, the courts are in apparent disagreement as to whether to issue an interim bargaining order in a § 10(j) proceeding.

In *Boire, supra,* the court ruled that it was not an abuse of discretion for the district court to deny an interim bargaining order where the parties have never enjoyed a bargaining relationship. In that case the union claimed to have a card majority, but no certification election had been held. The status quo to which the court restored the parties was that period prior to any union activities when the employees were not represented. Therefore, the court noted that an interim bargaining order, if granted, would materially alter that status.

In *Fuchs, supra,* at 387, in which a bargaining order was also denied, the court stated:

"Since the Union was never certified by the Board as the representative of respondent's employees and the question of whether the Union was designated on the basis of authorization cards is still an unresolved issue, the status quo presently is one where the Union does not represent respondent's employees."

Based upon those facts the court did not order interim bargaining, since to do so would disregard the status quo.

The Second Circuit in *Seeler v. Trading Port, Inc., supra,* at p. 40 (2nd Cir. 1975) disagreed with the holding in *Fuchs, supra.* In *Seeler,* the court stated:

"We hold only that when the Regional Director makes a showing, based on authorization cards, that the union at one point had a clear majority and that the employer then engaged in such egregious and coercive unfair labor practices as to make a fair election virtually impossible, the district court should issue a bargaining order under § 10(j) . . . A bargaining order then becomes a just and proper means of restoring the pre-unfair labor practice status quo and preventing further frustration of the purposes of the Act."

Although the Second Circuit expressly disagreed with *Fuchs, supra,* the decisions are not necessarily inconsistent. In *Fuchs,* the validity of the authorization cards was unresolved. Thus it is not clear whether the union in that case ever had a majority, whereas in *Seeler* it is clear that the Regional Director made a showing on the basis of authorization cards that the union had majority support.

When the Regional Director does demonstrate majority support based upon cards, the Second Circuit's analysis seems correct since an interim bargaining order returns the parties to a point in time when the union had majority support; a point in time before the union's strength was dissipated by employer unfair labor practices.

In the case before this Court the Regional Director has demonstrated that the International Alliance of Theatrical Stage Em-

ployees had majority support. However, this case is complicated by the fact that an appropriate bargaining unit has not yet been determined. In their petition for certification filed on July 6, 1978 with the NLRB, the International Alliance of Theatrical Stage Employees included in the unit for certification all stage hands, lighting, and sound employees at the Respondent's Reno facility. Excluded were supervisory and assistant supervisory personnel as defined by the NLRA. The Respondents doubt the appropriateness of this unit, and there has not yet been a hearing concerning this representation matter.

Despite the fact that the Regional Director, in both his memorandum and Petition contends that the unit designated is appropriate, the appropriateness of this unit will be determined by the NLRB after an evidentiary hearing is held.

In the present case the status quo which must be preserved is one in which the appropriate bargaining unit has not been determined. Before the parties can bargain collectively this issue will have to be determined. It follows that the request for a bargaining order is denied.

THEREFORE, let a preliminary injunction issue out of this Court in accordance with this opinion.