**Bernard GOTTFRIED, Regional Director of the Seventh Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAYCO PLASTICS, INC., Respondent.**

Civ. No. 79–71192.

United States District Court, E. D. Michigan, S. D.

June 29, 1979.

---

**1162**

John Ciaramitaro, George Alexander, William A. Wertheimer, Jr., Detroit, Mich., for petitioner NLRB.

Donald F. Sugerman, Nancy J. Schiffer, Miller, Cohen, Martens & Sugerman, Detroit, Mich., amicus curiae, for petitioner.

Allyn D. Kantor, Gary Klotz, of Keywell & Rosenfeld, Troy, Mich., for respondent.

### OPINION AND ORDER GRANTING PLAINTIFF'S PETITION FOR INJUNCTIVE RELIEF

CORNELIA G. KENNEDY, Chief Judge.

Petitioner National Labor Relations Board filed its complaint in this court against defendant Mayco on April 23, 1979, asking that this court grant interim relief under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). On May 29, 1979, the parties stipulated that there is reasonable cause for this court to believe that certain acts occurred which constitute unfair labor practices. The parties agreed that on November 9, 1978 a majority of defendant's 148 employees had designated the United Automobile Workers as their collective bargaining representative. On November 13, 1978, the UAW filed a representation petition with the NLRB (Case No. 7–RC–15157). The NLRB on January 4, 1979 issued a decision and direction of election, which was held on February 2, 1979. At that election only a minority of employees voted to be represented by the UAW in collective bargaining. Prior to the election, on December 8, 1978, the UAW requested that the NLRB institute unfair labor practice proceedings against Mayco under § 10(j). This relief was initially denied on February 7, 1979. On December 29, 1978, the Regional Director of the NLRB issued an unfair labor practice charge against Mayco and scheduled a hearing before an administrative law judge for July 9, 1979. On February 7, 1979, the UAW once again asked the NLRB to institute § 10(j) proceedings against Mayco, and on April 11, 1979, the NLRB did agree to commence these proceedings.

All parties have stipulated that there is reasonable cause for this court to believe that at least prior to February 2, 1979, the following underlying unfair practices existed; That during the period from November 6, 1978 to a presently undetermined date, that the employer engaged in a number of activities designed to prevent unionization of its employees; That Mayco questioned employees about their knowledge of union

support; That the company warned employees that serious consequences would follow a vote in favor of the union; That it stated that it would impose more onerous working conditions upon the employees, such as speeding up the presses; That this evidently occurred the day after the threat was issued; That it warned employees that it would be necessary to strike in order to achieve any results through collective bargaining; That the employer shortened break periods and issued warnings to employees who took longer breaks; That twenty-six employees received written warnings; That thirty employees were discharged as a result of organizational activities, and the company refused to hire one employee suspected of a pro-union attitude; That during this time, the defendant engaged supervisors to spy on employees or to give the appearance that they were being spied upon; That on December 1, 1978, wage increases were given to certain employees and their titles and working hours were changed in order to give the impression that they were supervisory employees. (As part of its order, the NLRB ordered that these employees were to be part of the bargaining unit and were not supervisors.) During December 1978, the company commenced certain new benefits for its employees, such as a free Christmas party and various sorts of insurance benefits. All of the actions of the company listed above constitute classic sorts of unfair labor practices. The NLRB contends that the UAW lost its representation election as a result of these actions and asks that this court afford interim relief pending a final hearing and determination by an administrative law judge. On May 29, 1979, this court denied the motion of the UAW to intervene in the case, but granted it the right to file briefs amicus curiae and to be heard on the form of any orders.

The NLRB has asked that this court find, based on the stipulated facts, that injunctive relief is appropriate. The NLRB has asked for reinstatement of discharged employees, a cease and desist order, the sending of notices of employee rights to unionization in order to counteract earlier warn-

ings, and a bargaining order. In support of its petition, the NLRB argues that since orders of the NLRB are not self-enforcing and since there can be no enforcement until after review by the Court of Appeals, it is necessary that interim relief be here provided to counteract the egregious and pervasive acts of the company. Such interim relief would be ancillary to and in aid of Board proceedings. The NLRB argues that in considering the necessity for relief, this court is bound to consider whether such relief is just and proper to effectuate national labor policy as announced by Congress. The standard for injunctive relief in such a case is whether it furthers the public interest, not just that of the private parties involved in this litigation.

The NLRB contends that the requested relief, particularly a bargaining order is necessary to return the parties to and to preserve the pre-unfair-labor-practice status quo. Any relief granted may, under the court's equity powers, be so limited or conditioned as not to prejudice the company nor to usurp the Board's functions. The NLRB urges this court to notice that the Sixth Circuit Court of Appeals has enforced remedial bargaining orders in instances involving far less egregious and varied unfair labor practices than those alleged here. There is thus a strong likelihood of eventual, although greatly delayed, success on the merits. Finally, the Board states that in this case, there are only two possible outcomes. If no injunctive relief or ineffective relief is granted, the violations and their consequences remain in effect and the company will have achieved its original purpose. Reliance on assertions that the company is no longer violating the act, according to the NLRB, when no evidence has been presented to demonstrate that assertion—and in light of its past practices—is inappropriate. On these grounds, the NLRB petitions this court for appropriate injunctive relief.

In reply, the defendant states that although it has stipulated that there is reasonable cause to believe the violations occurred, it is still the company's position that it has not violated the act. The company

urges that the NLRB has introduced no evidence to prove that injunctive relief is just and proper. In support of its position, the defendant alleges that there is now no continuing effect upon the employees and no further violations. It states that on March 19, 1979, it made offers of reinstatement to discharged employees, some of whom chose to accept reemployment. Thus any order of reinstatement would be redundant. According to the company, a bargaining order is extraordinary relief, particularly when, as here, the union has never been certified as the bargaining representative of its employees and there is no preexisting bargaining relationship.

The company states in its defense that injunctive relief is only appropriate upon a showing of irreparable harm. In this case, it argues the cause of action arose on December 28, 1978 when the unfair labor practice charge was issued by the Regional Director of the NLRB. The delay in proceeding until April 11, 1979 thus constitutes laches and demonstrates that the need for relief is not immediate. The defendant argues that if a bargaining order is issued it will most likely be given retroactive effect. This vitiates any need to enter such an order now, since any forthcoming Board order will probably cover obligations arising at this time. Finally, it states that an order entered now would cause irreparable harm to the employer.

As stated, the UAW was given permission to file an amicus brief. In its brief, the union explains that unfair labor practices are unlawful, not because they are proscribed expressly in the NLRA, but as a result of Board experience gleaned over the past few decades. According to the UAW, it is the Board's experience that unfair labor practices of the sort involved here have more far-reaching effects than to reach only the individual employees to whom they are initially directed. This is particularly true when most of them occurred within three days of the election. According to the UAW, to argue that injunctive relief by the court would be a usurpation of Board authority is to ignore the fact that § 10(j) expressly contemplates a role for the courts.

In enacting that section, Congress determined that courts could and should take appropriate action to ensure that this country's labor policy is not derogated.

■ Finally, the UAW addresses the defendant's assertion that injunctive relief is barred by laches. It states that in this case, the NLRB chose to proceed to election, hoping that the outcome of an election would provide a simple solution. Thus it cannot be argued that any cause of action accrued until after the election, and certainly not as early as December 29, 1978. Until the election, there was a potential satisfactory alternate to seeking § 10(j) relief. The UAW asks the court to consider the equities of the situation. It is the Board's delay which is urged as constituting a bar to relief, whereas, denial of relief on that basis would harm the employees and inure to the benefit of the employer. In addition, denial of relief on that basis would harm the public interest. Finally, it states that the delay does not indicate a decision by the Board not to proceed but was a function of the Board's caseload. Congress enacted § 10(j) as a means of providing interim injunctive relief pending Board action on unfair labor practices. The statute was necessary because Board orders are not self-enforcing. *Fuchs v. Hood Industries, Inc.,* 590 F.2d 395, 397 (1st Cir. 1979). Congress recognized that delay in processing charges and in implementing effective relief could mean that no relief would ever be effectively instituted. Courts have interpreted § 10(j) as calling for a two-step test. First, a court must determine that there is reasonable cause to believe the unfair labor practices occurred. *NLRB v. Aerovox Corp.,* 389 F.2d 475 (4th Cir. 1967); *Smith v. Old Angus, Inc.,* 82 L.R.R.M. 2930, 2935 (D.Md.1973). In the present case, the parties have stipulated that reasonable cause does exist to believe that acts in violation of the NLRA occurred. The first step of the § 10(j) test is therefore met.

■ The act next requires a court which has determined that reasonable cause exists to believe the act has been violated to decide what relief is just and proper. It has

been said that the process bears some resemblance to that involved in a temporary restraining order before a preliminary injunction. *Squillacote v. Meat & Allied Food Workers Local 248,* 534 F.2d 735 (7th Cir. 1976). The section calls for a fact determination which of necessity means there are no rigid guidelines to follow. *Minnesota Mining & Manufacturing Co. v. Meter,* 385 F.2d 265, 270 (8th Cir. 1967). However, the process does differ from the ordinary suit for equitable relief in that § 10(j) relief is afforded by a statute. Normal standards do not apply to legislative provisions for equitable relief, since Congress has directed that the court is to follow traditional equity practice, conditioned, however, by a concern for the public interest which Congress has determined to protect. *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 39–40 (2d Cir. 1975); *Farkas v. Oil, Chemical & Atomic Workers,* 422 F.Supp. 836, 837 (S.D.Ohio 1976).

█ Thus it follows that any injunctive relief afforded here must balance with the usual equity considerations the public interest as determined and announced by Congress. *Lebus v. Manning, Maxwell & Moore, Inc.,* 218 F.Supp. 702, 705 (W.D.La. 1963). In § 10(j), Congress provided for relief to further the purposes of the National Labor Relations Act. *See, e.g., Minnesota Mining & Manufacturing,* 385 F.2d 265, 270 (8th Cir. 1967). That policy is set out in § 1 of the NLRA, 29 U.S.C. § 151, which provides in part:

> Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, impairment, or interruption, and promotes the flow of commerce by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees.

> .    .    .    .    .

> It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

Thus, in enacting the NLRA, Congress was of the opinion that "[c]ollective bargaining is the very root of our national labor policy; it is a fundamental right of employees." *Sachs v. Davis & Hemphill, Inc.,* 71 L.R.R.M. 2126, 2129 (4th Cir. 1969).

In acting to promote collective bargaining as the foundation of pacific and purposeful labor relations, the courts must bear in mind the experience of the NLRB that unfair labor practices have a continuing effect, particularly when systematic, extensive, and numerous. The existence of § 10(j) indicates Congress' considered opinion that a final order through the Board's normal process is simply ineffective in certain cases to undo the effects of unfair labor practices which are inimical to the public interest. *Smith v. Old Angus, Inc.,* 82 L.R.R.M. 2930, 2936 (D.Md.1973). "Just as a cease and desist order without more is ineffective as final relief in a *Gissel* [*N.L.R.B. v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547] situation, it is, in certain cases, also insufficient as interim relief." *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 37 (2d Cir. 1975). Indeed, the fact that § 10(j) was enacted is an indication that Congress desired courts to furnish relief at the appropriate time and in an effective manner. *Sachs v. Davis & Hemphill,* 71 L.R.R.M. 2126, 2127, 2129–30 (4th Cir. 1969); *Angle v. Sacks,* 382 F.2d 655, 659 (10th Cir. 1967); *see generally Amalgamated Clothing Workers v. Richman Brothers Co.,* 348 U.S. 511, 516–17, 75 S.Ct. 452, 99 L.Ed. 600 (1955).

In the present case, the court is called upon to fashion effective relief which recognizes the equities of the situation. The final relief to be ordered by the NLRB in this case, assuming that the charged unfair labor practices are found to have a basis in fact, has been clearly set forth by case law and Board action. It is said that the relief must protect the status quo. The court here has two alternatives it could determine to be the status quo the present situation or that existing before the charged unfair labor practices took place. This is a situation in which any relief imposed will mean that one party effectively wins and the other loses. To refuse injunctive relief in this case would be to determine that the present situation, which exists as a result of the defendant's unfair labor practices, is to continue. The status quo which exists as a result of unfair labor practices is undeserving of protection. *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 38 (2d Cir. 1975). Protection of the pre-unfair-labor-practice status quo accords with the public interest in promoting collective bargaining and also follows from the equitable doctrine that relief should not be afforded one with unclean hands. The status quo, then, which the court should protect, is that which existed on November 9, 1978, when a majority of the defendant's employees chose the UAW as their collective bargaining representative and before the first employer unfair labor practices.

In determining the relief necessary to return the parties to this status quo on November 9, 1978, the court acts in the stead of the NLRB and following the relevant considerations as expressed by the Board. "[T]he Board has the 'special function of applying the general provisions of the Act to the complexities of industrial life,' . . . and its special competence in this field is the justification for the deference accorded its determination." *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 266, 95 S.Ct. 959, 968, 42 L.Ed.2d 786 (1975); *Kable Printing Co. v. NLRB,* 545 F.2d 1079, 1083–84 (7th Cir. 1976). *See also Ford Motor Co. v. NLRB,* —— U.S. ——, —— - ——, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979).

The NLRB has asked first for an order of reinstatement for those employees who were discharged. The defendant replies that such an order is unnecessary since it voluntarily offered reinstatement on March 19, 1979, and slightly over one-half or eighteen of thirty-two employees chose to return to work. The court is of the opinion, however, that a reinstatement order is appropriate. When a company's action creates an atmosphere inhospitable to union adherents they may be reluctant to once again subject themselves to those conditions. The court has not been presented with any facts concerning the terms and method by which reinstatement was offered. Such an order, combined with other equitable relief may act to return the work force more nearly to the status quo than the offer already made. Finally, if the company's contention is correct, that it has already effectively complied with such an order, it is difficult to see wherein it would be prejudiced. Accordingly, the company is ordered to offer unconditional reinstatement to their former positions to their former discharged employees who have not yet returned to work.

The NLRB next asks for a cease and desist order. The parties do not contend that any violations are now occurring. Such an order is not appropriately granted in the absence of evidence of continuing violations. The NLRB asks also for written notice to the defendant's employees of their rights under the National Labor Relations Act. It is ordered that the company post copies of the Court's Order on all company bulletin boards or similar places for the posting of notices. In addition, copies of the Order are to be sent to all discharged employees who have not yet been reinstated with the above letters offering reinstatement. It is ordered that copies of this Order appear on the bulletin boards, or equivalent places by July 6, 1979. It is ordered that copies of the Order be mailed to discharged employees by July 13, 1979.

The most controversial request of the NLRB is undoubtedly the imposition of

a bargaining order. In *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court set out standards which permit the NLRB to issue a bargaining order despite a union's failure to receive certification through a representation election. In reaching its result, the Court pointed out that it had never been the law that a certification was the only way a bargaining obligation would be invoked. The only requirement was that the union be able to demonstrate convincing majority support "by other means under the unfair labor practice provision of § 8(2)(5)", *id.,* at 596–97, 89 S.Ct. at 1931. The Court held that cards can operate as such a demonstration. The Court further found that in a case, in which the employer has engaged in conduct disruptive of the process, "cards may be the most effective—perhaps the only way—of assuring employee choice." *Id.* at 602, 89 S.Ct. at 1934. Undoubtedly, imposing a duty which is owed under law and which the employer has tried to evade is the best means of both correcting the wrong and giving redress and protection to the injured parties. *Trading Port, Inc.,* 219 N.L.R.B. No. 76, 89 L.R. R.M. 1565, 1569 (1975). Such a bargaining order is not a punishment for employer misconduct, *Bandag, Inc. v. NLRB,* 583 F.2d 765, 770–71 (5th Cir. 1978), although it may serve to deter future misconduct. *Gissel, supra,* 395 U.S. at 612, 89 S.Ct. 1918. Rather a bargaining order is a simple recognition that the cards have become the only meaningful indicator of employee sentiment, *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 40 (2d Cir. 1975); *Smith v. Old Angus, Inc.,* 82 L.R.R.M. 2930 (D.Md.1973), and thus imposes as an affirmative duty a duty which already exists.

*Gissel* requires that there must have been evidence of majority employee support for the union through valid authorization cards, and that employer unfair labor practices must have been at least serious and extensive. If this is the case, then a bargaining order is entered. *Gissel, supra,* 395 U.S. at 610, 89 S.Ct. 1918; *Taylor v. Circo Resorts, Inc.,* 458 F.Supp. 152, 156 (D.Nev.1978). In the present case, it is admitted that a ma-jority of employees signed authorization cards. It is also stipulated that there is reasonable cause to believe that the employer committed a number of acts which constitute unfair labor practices which clearly are serious and extensive. *See NLRB v. Lou de Young's Market Basket, Inc.,* 430 F.2d 912 (6th Cir. 1970). Such acts have destroyed the laboratory conditions necessary for a fair representation election. *NLRB v. Empire Corp.,* 518 F.2d 860, 863 (6th Cir. 1975). It would appear that where violations are so extensive and affected such a large percentage of employees, there can be little possibility of erasing the future effects. *Franks Brothers Co. v. NLRB,* 321 U.S. 702, 704, 64 S.Ct. 817, 88 L.Ed. 1020 (1944). Once a majority has been established, the bargaining relationship should "be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed." *Id.* at 705, 64 S.Ct. at 819. If this is done, employees may eventually again rely upon the union and the process of law as their protectors.

■ As a form of equitable relief, a bargaining order can be specially tailored in order to best protect all interests. *See, e. g., Barbour v. Central Cartage, Inc.,* 583 F.2d 335 (7th Cir. 1978); *Ferguson-Steele Motor Co.,* 111 N.L.R.B. 1076, 35 L.R.R.M. 1638, 1639–40 (1955). It is important also to bear in mind that the only obligation imposable is the duty to bargain in good faith. The NLRA does not compel any particular agreement or any agreement at all. *NLRB v. American National Insurance Co.,* 343 U.S. 395, 401–02, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

The defendant has raised several defenses to an imposition of injunctive relief. It argues that as an equity court, the defense of laches should be considered in the decision of what relief is appropriate. The company avers that delay also indicates that no relief is required. The defense of delay has been raised in similar fact situations. Courts have held that delay on the part of the Board is common, *Linden Lumber Division v. NLRB,* 419 U.S. 301, 306, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974); *Solien v.*

Merchants Home Delivery Service, Inc., 557 F.2d 622, 627 n.2 (8th Cir. 1977). Unquestionably, wronged employees suffer as much by Board delay as the employer and should certainly not be denied relief on that ground when they have vigorously pursued redress. *NLRB v. Rutter-Rex Manufacturing Co.*, 396 U.S. 258, 264–65, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); *Solien v. Merchants Home Delivery, Inc.*, 557 F.2d 622, 627 (8th Cir. 1977); *Smith v. Old Angus, Inc.*, 82 L.R.R.M. 2930, 2938 (D.Md.1973).

The defendant next argues that an injunction would constitute a usurpation of Board power, citing *e.g., Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); *but see Fuchs v. Hood Industries, Inc.*, 590 F.2d 395, 397 (1st Cir. 1979). It is clear that a court must guard against usurpation of Board power when it reviews Board action. However, it is difficult to see how carefully tailored relief granted at the request of the NLRB can usurp its powers. It is the Board which is here petitioning this court to give an effective remedy, which it, is incapable of doing itself.

 Finally, the defendant argues that there is no need for any relief since it has voluntarily complied with the act and is no longer continuing its violations. It has long been recognized in the field of labor law that a lack of overt acts following a period of extensive unfair labor practices does not mean that no violations presently exist. Indeed, once an employer has succeeded in destroying the laboratory conditions necessary for a fair election it may no longer need to violate a cease-and-desist order. *Gissel, supra,* 395 U.S. at 612, 89 S.Ct. 1918; *Smith v. Old Angus, Inc.*, 82 L.R.R.M. 2930, 2936 (D.Md.1973). Thus in such a case, the requisite showing of irreparable harm may be less. *Old Angus, supra,* at 2936.

The defendant, Mayco, is ordered to bargain in good faith with the representatives of its employees concerning the terms and conditions of their employment. This bargaining order will remain in effect pending disposition of the unfair labor practices in the Board proceedings. Upon such disposition either party may petition this Court to dissolve the injunction.

For the reasons stated in the opinion above, the plaintiff NLRB's request for injunctive relief is GRANTED.