Bernard GOTTFRIED, Regional Director of the Seventh Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PURITY SYSTEMS, INC., Respondent.

No. G 88–726 CA7.

United States District Court,
W.D. Michigan, S.D.

Oct. 28, 1988.

OPINION

ENSLEN, District Judge.

I. *Background*

This proceeding is before the Court on a petition for a preliminary injunction filed by the Regional Director of Region Seven of the National Labor Relations Board ("Board"). Section 10(j) of the National Labor Relations Act ("Act") authorizes the United States District Court to issue a preliminary injunction pending disposition of an unfair labor practice charge by the Board. 29 U.S.C. § 160(j) (1983).

The unfair labor charge which is the subject of the instant petition was filed on July 21, 1988 and was amended on August 4, 1988 by the United Steelworkers of America, AFL–CIO–CLC ("Charging Party"). The charge alleges that the respondent, Purity Systems, Inc., has violated Sections 8(a)(1) and (3) of the Act by, among other things, threatening employees with plant closure if they unionized and by discharging three employees, half its production force, because of their union activities.

An unfair labor practice complaint has been issued and a hearing is scheduled before an administrative law judge on November 14, 1988.

The Court has before it affidavits and other documents to supplement the evidence heard at the hearings of October 20 and 26, 1988.

II. *Law*

Section 10(j) of the Act provides that after a complaint has been issued by the Board alleging violations of the Act, the Board may seek preliminary injunctive relief in the appropriate United States District Court in order to prevent a respondent from engaging in any conduct which would completely frustrate the purpose and policies under the Act and from accomplishing an illegal objective before being placed under future legal restraint. 29 U.S.C. § 160(j) (1983). *See generally Sheeran v. American Commercial Lines, Inc.,* 683 F.2d 970 (6th Cir.1982); *Levine v. C & W Mining Co.,* 610 F.2d 432 (6th Cir.1979).

While the board has been empowered by Congress to issue complaints, conduct hearings, and ultimately decide whether an unfair labor practice has occurred, a decision and order of the Board is not self-enforcing and no sanctions attach unless the Board's

order is enforced after review of a Court of Appeals.

Congress sought to remedy the situation where unfair labor practices are unchecked for long periods of time by adding § 10(j) to the Act in 1947. The district court is therefore empowered to grant interim injunctive relief pending final disposition of any unfair labor practices by the Board. Such relief is appropriate under the Act where the Court finds reasonable cause to believe that the Act has been violated and that the relief sought is just and proper.

■ It is well-settled that the ultimate determination of whether the Act has been violated is reserved exclusively to the Board, subject to review by the Court of Appeals. As the Sixth Circuit recently clarified, to issue a temporary injunction, a district court must make two findings. First, the court must find there is "reasonable cause" to believe that unfair labor practices have occurred. (This is a finding of fact that may only be set aside if clearly erroneous). *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987). To establish reasonable cause does not require the evidence needed for enforcement of a Board order after a full hearing on the merits, indeed, the Sixth Circuit noted that the burden on the Regional Director in a 10(j) proceeding is "relatively insubstantial." *Gottfried v. Frankel*, 818 F.2d at 493. *See also Levine v. C & W Mining Co.*, 610 F.2d at 435. A district court must only produce "some evidence" in support of the petition. *Gottfried v. Frankel*, 818 F.2d at 493.

■ Moreover, the district court is not required to resolve disputed issues of facts or credibility in a 10(j) proceeding; the court's function is limited to a determination of whether such issues could ultimately be resolved by the Board in favor of the petitioner. *Levine v. C & W Mining Co.*, 610 F.2d at 435.

Petitioner's legal propositions "need only demonstrate ... that the legal theory upon which he proceeds is 'substantial and not frivolous.'" *Hirsch v. Building & Construction Trades Council*, 530 F.2d 298, 302 (3rd Cir.1976). *See also Gottfried v. Frankel*, 818 F.2d at 493; *Kennedy v. Los Angeles Typographical Union*, 418 F.2d 6, 8 (9th Cir.1969); *Boire v. International Brotherhood of Teamsters*, 479 F.2d 778, 789–92 (5th Cir.1973).

Second, the court must find that the requested relief is "just and proper." *Gottfried v. Frankel*, 818 F.2d at 494; *Sheeran v. American Commercial Lines, Inc.*, 683 F.2d at 978; *Levine v. C & W Mining Co.*, 610 F.2d at 435. The granting of injunctive relief under this just and proper standard "is a matter committed to judicial discretion." *Gottfried v. Frankel*, 818 F.2d at 494. The district court making this determination should bear in mind that "section 10(j) was added to give the Board a means of preserving the status quo pending the completion of its regular procedures.... By the same token, the relief to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Id.* at 495.

■ Finally, where necessary, the district court may grant injunctive relief without a full evidentiary hearing. *See, e.g., id.* at 493 (reasonable cause finding was proper based on evidence from NLRB transcript, affidavits, and documents).

### III. *Analysis*

To determine whether the petitioners are entitled to injunctive relief, I must first decide whether there is reasonable cause to believe that respondent violated Section 8(a)(1) and (3) of the Act. To begin with, section 8(a)(1) prohibits employers from threatening employees with reprisals because of the employee's support for a union. *See, e.g., Justak Bros. v. NLRB*, 664 F.2d 1074, 1082 (7th Cir.1981).

■ There is reasonable cause to believe that Purity Systems, Inc. ("Employer") made threats of reprisals as a result of its employees' support for the union in violation of 8(a)(1) of the Act. One employee received a direct threat on July 14, 1988 from the company's president, John Mrozinski: "[I] would move our whole plant to Bay City in twelve hours if we got a union in at Purity." Rex Conklin Affidavit, at 3.

In such a small plant, it is not unreasonable to believe that such an inflammatory remark might be the subject of discussion among other employees as well.

Also there is reasonable cause to believe that the immediate firing of three out of four employees who had signed union authorization cards precipitated a less direct, but still potent and lingering threat to the remaining employees.

■ Terminating employees because of their known or suspected activities supporting a union also violates Sections 8(a)(1) and (3) of the Act. *NLRB v. Health Care Logistics, Inc.*, 784 F.2d 232 (6th Cir. 1986); *NLRB v. Clinton Packing Co.*, 468 F.2d 953 (8th Cir.1972); *NLRB v. Ritchie Mfg. Co.*, 354 F.2d 90 (8th Cir.1968); *NLRB v. American Casting Service, Inc.*, 365 F.2d 168 (7th Cir.1966). When deciding whether this violation of 8(a)(1) and (3) has occurred, a court may take into account circumstantial evidence and all relevant facts about an employer's knowledge of the employee's union activities. *NLRB v. Health Care Logistics, Inc.*, 784 F.2d at 236.

■ There is reasonable cause to find that the employer here terminated three employees due to the employer's knowledge or suspicion of the employees' activities supporting the union. This type of termination violates Sections 8(a)(1) and (3) of the Act. On July 7, 1988, Alan Conklin, Tim Jerome, and Richard Briske were suddenly fired within hours of signing their union authorization cards. Alan Conklin Affidavit, at 5; Tim Jerome Affidavit, at 3; Richard Briske Affidavit at 2. The sudden nature of the firing and the employees chosen to be fired provide circumstantial evidence that those affiliated with the union were terminated for that reason. There is also direct and circumstantial evidence of the employer's knowledge and distaste for the employee's union activity. *See infra* at 301–302 (discussion of anti-union animus).

■ Discharging employees in retaliation for their concerted protests and demands about their working conditions also violates section 8(a)(1) of the Act. *See, e.g., Vic Tanny Int'l Hotel v. NLRB*, 622 F.2d 237, 241 (6th Cir.1980); *NLRB v. Leslie Metal Arts Co.*, 509 F.2d 811, 813 (6th Cir.1975). Where an employer can show probative evidence indicating misconduct on the part of the employee, for example, a deliberate slow down, the evidence may support a defense to the 8(a)(1) charge. *See Silverman v. Imperia Foods, Inc.*, 646 F.Supp. 393, 399–400 (S.D.N.Y.1986). Evidence that an employer failed to negotiate with the union, communicated no misconduct in employees' letters of termination, and took no disciplinary actions in response to the misconduct could support a finding that the alleged misconduct did not cause the termination. *Id.*

■ Here the Court finds adequate evidence to support the conclusion that the three discharged employees were fired in retaliation for their concerted protests and attempts to better undesirable working conditions. Alan Conklin, Tim Jerome, and Richard Briske were dissatisfied with various aspects of their employment, including the pay rate, the lack of insurance, and the excess heat at times in the production area. This dissatisfaction was communicated openly to management. Alan Conklin Affidavit, at 3; Tim Jerome Affidavit, at 2–4; Richard Briske Affidavit, at 1; Alan Conklin Supplemental Affidavit, at 1–9; Alan Edens Supplemental Affidavit, at 2; Joseph Mauer Supplemental Affidavit, at 3–4.

Though in defense the respondent argues that the firings were a result of employee misconduct, there is much evidence supporting petitioner's counter-defense: the three employees were not warned or disciplined for any alleged misconduct prior to the firings. Richard Briske Affidavit, at 3; Richard Briske Supplemental Affidavit, at 1; Alan Conklin Supplemental Affidavit, at 7–9; Tim Jerome Supplemental Affidavit, at 1, 3; Joseph Mauer Supplemental Affidavit, at 2 ("I did not give them a warning. . . .")

Also, if there were no warnings given, the managers' comments on the firings such as "You guys weren't happy here" or "[Tim Jerome and Alan Conklin] had poor

attitudes" may fairly be read as euphemisms for "The company will not tolerate your concerted protests." *See* Richard Briske Supplemental Affidavit, at 1; Alan Conklin Affidavit, at 3.

■ Anti-union animus in association with prohibited conduct affects whether a charge of an unfair labor practice can be sustained. *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963); *NLRB v. Great Dane Trailers*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). The statutory language of section 8(a)(3) states that an employer commits an unfair labor practice "by discrimination in regard to hire or tenure of employment or any term or condition to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). This means that finding a violation is normally determined by whether the discriminatory conduct was motivated by anti-union motives. *NLRB v. Great Dane Trailers*, 388 U.S. at 33, 87 S.Ct. at 1797; *American Ship Building Co. v. Labor Board*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The Supreme Court set forth the principles guiding decision-making here in *NLRB v. Great Dane Trailers*, 388 U.S. at 34–35, 87 S.Ct. at 1798:

> First, if it can reasonably be concluded that the discriminatory conduct was 'inherently destructive' of important employee rights, no proof of an anti-union motivation is needed and the [court] may find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is 'comparatively slight,' an anti-union motivation must be proved to sustain the charge *if* the employer has come forth with evidence of legitimate and substantial business justifications for the conduct.

*Id.* at 35, 87 S.Ct. at 1798.

■ The Court then concluded that in either situation, where some discriminatory conduct has been shown, the burden is on the employer to establish that legitimate objectives motivated him. *Id.* With "inherently destructive" conduct, the employer has the burden of demonstrating proper motives for his conduct. *Labor Board v. Erie Resistor Corp.*, 373 U.S. at 228–229, 83 S.Ct. at 1145. With "comparatively slight" harm to employees, and a substantial, legitimate business end, the employer's conduct is prima facie lawful, and an affirmative showing of unlawful motivation *must* be made. *Labor Board v. Brown*, 380 U.S. 278, 289, 85 S.Ct. 980, 987, 13 L.Ed.2d 839 (1965).

The Court finds reasonable cause to believe that the employer had knowledge or suspicions of union activity and let anti-union sentiments motivate conduct made illegal under Sections 8(a)(1) and (3) of the Act. First, there is direct evidence of anti-union animus: The President of Purity Systems, Inc., John Mrozinski, told Alan Conklin that the employees would be getting new benefits "because he did not want a union at Purity." Alan Conklin Affidavit at 2. There is likewise evidence that on the night the employees were fired, Alan Conklin told Mrozinski how some of the employees were trying to start a union at Purity. Mrozinski replied, "Well, then my Board of Directors was right, weren't they?" Alan Conklin Affidavit, at 6.

Circumstantial evidence is available too. Several managers knew that the three terminated employees had been involved with a union at former jobs. Joseph Mauer Affidavit, at 6; Alan Edens Supplemental Affidavit, at 2. Other employees were told of the union cards and of attempts to bring in a union and promptly thereafter three of the four who signed cards were terminated without warning. Rex Conklin Affidavit, at 3; Alan Conklin Affidavit, at 5; Tim Jerome Affidavit, at 3; Richard Briske Affidavit, at 2.

Because of the conduct described above, petitioner seeks an order enjoining respondent from: 1) threatening employees with plant closure if they select the Charging Party or any other labor organization as their collective bargaining agent; 2) terminating or otherwise discriminating against them because of union or protected concerted behavior; 3) in any manner interfer-

ing with, restraining or coercing employees in the exercise of rights guaranteed by Section 7 of the Act. In addition, petitioner requests that respondent be ordered to: 4) offer interim reinstatement to Tim Jerome, Alan Conklin, and Richard Briske, displacing as needed new employees hired as their replacements; 5) recognize and bargain in good faith with the Charging Party as the exclusive bargaining agent of its production and maintenance employees; and finally, 6) post copies of the District Court order at its Bear Lake, Michigan facility.

To grant the petitioner's request for injunctive relief, I must view the specifics of the relief sought, and determine whether it meets the standard of being "just and proper." *Gottfried v. Frankel*, 818 F.2d at 494; *Sheeran v. American Commercial Lines, Inc.*, 683 F.2d at 978; *Levine v. C & W Mining Co.*, 610 F.2d at 435.

Petitioner's first request, a cease and desist order, has been found by other courts to be "just and proper" under Section 10(j) of the Act where, as here, there is reasonable cause to believe that the effects of unfair labor practices linger. *See, e.g., Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902, 904 (3d Cir.1981). Though respondent argues that there is a "conspicuous absence" of any continuing violation, the Sixth Circuit has made it clear that cessation of violations is insufficient ground for denying interim relief. *See Gottfried v. Frankel*, 818 F.2d at 496; *C & W Mining Co.*, 610 F.2d at 436.

In circumstances involving 8(a)(3) violations, injunctive relief ordering reinstatement, also requested by petitioner, has been deemed "just and proper." *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir.1980); *Angle v. Sacks*, 382 F.2d 655 at 661 (10th Cir.1967); *Gottfried v. Mayco Plastics*, 472 F.Supp. 1161 at 1166–67 (E.D. Mich.1979). The goal of such reinstatement is to avoid the serious risk of adverse employee interest in unionization following the termination of employees in violation of Section 8(a)(3). *See, e.g., Kaynard v. Palby Lingerie, Inc.*, 625 F.2d at 1053. Even where new employees are hired in place of those discharged, courts have been willing to order reinstatement on the premise that the statutory rights of those discharged outweigh the rights of employees hired to take their place. *See Maram v. Universidad Interamericana*, 722 F.2d 953, 959 (1st Cir.1983) (quoting L. Hand, J. "It is probably true ... that most men taking jobs so made vacant, realize from the outset how tenuous is their hold."). *See also Taylor v. Circo Resorts, Inc.*, 458 F.Supp. 152, 156 (D.Nev.1978).

Petitioner's final request, an interim bargaining order, is appropriate where a union has obtained union authorization cards from a majority of employees in an appropriate unit and the employer's unfair labor practices made it unlikely that a fair representation election will take place. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *NLRB v. Quality Aluminum Products, Inc.*, 813 F.2d 795, 796–97 (6th Cir.1987). The Supreme Court has characterized a threat of plant closure as one type of conduct which will most likely preclude a fair election. *NLRB v. Gissel Packing*, 395 U.S. at 611 n. 31, 89 S.Ct. at 1938 n. 31.

As to this final request, respondent objects to the petitioner's conclusion that the four employees who signed union authorization cards constituted a "majority" of its work force. Instead, respondent argues that there were *ten*—not six—"full-time or part-time employees" on its payroll as of July 12, 1988. This Court, however, need only determine that there is "reasonable cause" to believe that an appropriate bargaining unit represented a majority of employees. *Kaynard v. Palby*, 625 F.2d at 1054–55.

An employee may be eliminated from the unit for one of many reasons. The Act itself precludes independent contractors and supervisors from being part of a bargaining unit. 29 U.S.C. § 152(3). An employee may also be excluded from a plant-wide unit where the employee lacks a community of interest with the others: similarity of wages and benefits, similarity of supervision, similarity of working hours, qualifications, skills, duties, along with frequent contact or communication. *Kalama-*

*zoo Paper Box Corp.*, 49 LRRM 1715 (1962). Also, an employee may be classified as a "confidential" employee and excluded as the relative of a management employee who has a substantial ownership of stock in the employing corporation. *See Foam Rubber City # 2 of Fla., Inc.*, 66 LRRM 1096 (1967). Other considerations courts have used for excluding the relative in these cases include whether the relative and the employee resided together, whether the relative had work duties similar to other plant employees, and whether the relative had interests to be protected that were similar to the other plant employees. *Foam Rubber City*, 66 LRRM at 1096; *Modern Manufacturing Co.*, 110 LRRM 1183 (1982).

Respondent also argues that some courts have held interim bargaining orders to be inappropriate as other than "just and proper relief" in the absence of a Board determination of the appropriate unit. *Taylor v. Circo Resorts, Inc.*, 458 F.Supp. 152 (D.Nev.1978). There is, however, "some disagreement" in the courts on this issue, *Taylor v. Circo*, 458 F.Supp. at 156, and there is adequate support in the case law which says that "in situations where an ultimate determination in favor of a union would be meaningless because of the success of unfair labor practices a district court may grant temporary relief including an interim bargaining order." *Levine v. C & W Mining*, 610 F.2d 432, 436 (6th Cir. 1979). *See also Kaynard v. MMIC, Inc.*, 734 F.2d 950, 953–54 (2d Cir.1984); *Gottfried v. Mayco*, 472 F.Supp. at 1166–67.

This Court finds reasonable cause to believe any of the following employees may properly be eliminated from the bargaining unit: Pam Edens, Louis Lenz, Mark Eddy, or Brian Thomas. If these individuals are not part of the bargaining unit, then there is strong evidence that on July 12, 1988 four out of six production and maintenance employees signed union authorization cards. Plaintiff's Exhibit 2; Alan Conklin Supplemental Affidavit at 10–11; Rex Conklin Supplemental Affidavit, at 3–5; Tim Jerome Affidavit, at 3; Richard Briske Affidavit, at 2.

■ Pam Edens may be excluded because of evidence that she had supervisory duties in interior production work. Petitioner's Exhibit 5. There is evidence that much of the time she is not involved with production work, but is performing office work. Alan Conklin Supplemental Affidavit, at 10–11; Rex Conklin Supplemental Affidavit, at 2–3. Eden's husband is a manager with Purity Systems, Inc. and he holds a 14.4% ownership interest in the company. Alan Edens Supplemental Affidavit, at 1; Respondent's Testimony at October 26, 1988 Hearing. There is evidence that Edens is treated differently than other production and maintenance employees, for example, she is not required to punch a time clock. Parties' Stipulation, October 26, 1988 Hearing.

■ Louis Lenz, according to evidence presented to this Court, is an electrician who is not directly supervised, works sporatically, and is not on the payroll. Petitioner's Exhibit 7; Petitioner's Exhibit 5; Testimony of Joseph Mauer, October 26, 1988 Hearing; John Mrozinski Supplemental Affidavit, at 2. It appears from his records that he was not working at the time the four employees signed authorization cards. *Id.*

■ Mark Eddy worked in production, according to some evidence, for short periods of time in the Winter and Spring of 1988. Alan Conklin Supplemental Affidavit, at 10; Rex Conklin Supplemental Affidavit, at 2. There is no record of Eddy on the payroll records. Petitioner's Exhibit 5. There is evidence that he was not working in production when the four employees signed authorization cards, but that he returned two days after the firings and took a job he had not done before, Alan Conklin's old laminating job. Rex Conklin Supplemental Affidavit, at 2; John Mrozinski Supplemental Affidavit, at 2.

■ There is likewise evidence to support a finding that Brian Thomas is properly excluded from the bargaining unit. He, like Eddy and Lenz, does not appear on the company's payroll records. Petitioner's Exhibit 5. Thomas was a truck driver on

and off for Purity in the Spring and Summer of 1988, has done some occasional production work, and has been paid by barter instead of check or cash. Petitioner's Exhibit 9.

In sum, the Court believes there is reasonable cause to believe that an appropriate bargaining unit was represented by a majority of employees at Purity Systems, Inc. An interim bargaining order is just and proper relief because as in *Kaynard*, there is reasonable cause to believe the employer here threatened to close the plant, promised new benefits in lieu of a union, and fired three employees within hours of when they signed union authorization cards. Prolonging the status quo and the effects of the employer's action only decreases the probability that there will be a fair election held at Purity Systems, Inc. and increases the probability that existing union support will be undermined.

■ For all the reasons above, I conclude the following:

1. Respondent is subject to the restraints of the National Labor Relations Act, including sections 8(1)(1) and 8(a)(3).

2. Petitioner has presented a substantial, nonfrivolous theory of liability.

3. By the acts and conduct described above, there is reasonable cause to believe that respondent engaged in acts designed to interfere with, restrain, or coerce its employees in the exercise of their rights under the Act, in violation of section 8(a)(1). 29 U.S.C. § 158(a)(1).

4. By the acts and conduct described above, there is reasonable cause to believe that respondent has discriminated in terms of hiring of employees and the tenure of employment so as to discourage membership in a labor organization, in violation of section 8(a)(3) of the Act. 29 U.S.C. § 158(a)(3).

5. The above acts and conduct are sufficiently serious so as to:

—Issue a cease and desist order, requiring respondent not to engage in activities in violation of sections 8(a)(1) and (3) of the Act;

—Order reinstatement of three employees—Tim Jerome, Alan Conklin, and Richard Briske—for the purpose of returning the work force to the status quo and in order to decrease the risk of "serious adverse employee interest in unionization." This reinstatement will occur in spite of any displacement of employees who have been hired to take their place.

—Order an interim bargaining order to require the respondent to recognize and bargain in good faith with the Charging Party as the exclusive bargaining agent of its production and maintenance employees.

—Require respondent to post copies of this Court's order at its Bear Lake, Michigan facility.

5. Under the circumstances of this case, the following injunctive relief is "just and proper" as contemplated in section 10(j) of the Act. 29 U.S.C. § 160(j).