683 F.2d 970
 110 L.R.R.M. (BNA) 3168, 94 Lab.Cas. P 13,675
 Thomas M. SHEERAN, Acting Director of Region 9 of the
National Labor Relations Board for and on behalf
of the National Labor Relations Board,
Petitioner- Appellee,
v.
AMERICAN COMMERCIAL LINES, INC. and its subsidiaries:
American Commercial Barge Line Company, Inland
Tugs Co., River Division and Canal
Division, Mac Towing, Inc.,
Respondents-Appellants.
 No. 80-5290.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 2, 1982.
Decided July 12, 1982.
 
 Vance D. Miller, St. Louis, Mo., Russel H. Saunders, C. Alex Rose, Louisville, Ky., for respondents-appellants.
 Daniel J. Roketenetz, Raymond Neusch, N.L.R.B., Cincinnati, Ohio, Herbert Segal, Irwin Cutler, Louisville, Ky., Joseph Norelli, N.L.R.B., Ellen A. Farrell, Washington, D.C., for petitioner-appellee.
 Before KEITH and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PHILLIPS, Senior Circuit Judge.
 
 
 1
 This is an appeal from an order granting a preliminary injunction pursuant to § 10(j) of the National Labor Relations Act as amended, 29 U.S.C. § 160(j).
 
 
 2
 These proceedings grew out of charges filed with the National Labor Relations Board by Seafarers International Union (SIU or Union) that the appellants have engaged in numerous unfair labor practices.
 
 
 3
 Between February 20 and May 6, 1980, the General Counsel of the Board issued by the Regional Director two complaints and notices of hearing against appellants and an order consolidating the two cases, charging violations of §§ 8(a)(1), (2), (3), and (5) of the National Labor Relations Act. The charges included: interference with employees' union activities; discrimination against SIU members in hiring; encouragement of employees to file decertification petitions or to join another Union; and unilateral repudiation of the Union hiring hall and Union representative access provisions of the collective bargaining agreement.
 
 
 4
 After receiving permission from the Board, the Regional Director brought this action in district court and sought a preliminary injunction pursuant to 29 U.S.C. § 160(j) to preserve the status quo during the pendency of the proceedings before the Board. Following an evidentiary hearing, Chief District Judge Charles M. Allen granted some, but not all, of the relief sought by the Board and entered an order granting the following preliminary injunction on July 25, 1980:
 
 PRELIMINARY INJUNCTION
 
 5
 This action, having come on to be heard on the motion of petitioners for a preliminary injunction pursuant to Section 10(j) of the Labor Management Relations Act, 1947, as amended, and the case, having been tried before the Court without a jury, and the Court, having entered its findings of fact, conclusions of law and memorandum opinion, and being fully advised in the premises,
 
 
 6
 NOW, THEREFORE, IT IS ORDERED AND ADJUDGED that pending the final disposition of the matters before the National Labor Relations Board, the respondents, American Commercial Lines, Inc., Inland Tugs Company, American Commercial Barge Line Company, and Mac Towing, Inc., their officers, captains, agents, supervisors, employees, attorneys or representatives be and they are hereby enjoined from interfering with employees when they try to process grievances and enforce contract provisions, or in a lawful manner express support for the union, and are hereby enjoined from refusing to permit duly designated union representatives to board respondents' vessels and are enjoined from refusing to use the union hiring halls as the exclusive source for new hires into the units described in Paragraph 13 of the petition.
 
 
 7
 IT IS FURTHER ORDERED AND ADJUDGED that the motion to dismiss filed by American Commercial Lines, Inc. be and it is hereby overruled.
 
 
 8
 IT IS FURTHER ORDERED AND ADJUDGED that this case shall remain upon the docket of this Court, and upon the final disposition by the Board of the matters pending before it, the petitioner shall cause this proceeding to be dismissed.
 
 
 9
 The respondents filed a notice of appeal from the order granting the preliminary injunction. After the filing of the notice of appeal, the injunction was stayed by a series of stipulations of the parties. Later, the district court denied appellants' renewed motion to dismiss the injunction, but stayed the injunction pending approval by the Board of a finalized settlement stipulation, upon the condition that the appellants voluntarily abide by the terms of the injunction. The General Counsel of the Board did not approve the proposed settlement stipulation. The petitioner-appellee thereupon filed a motion in the district court to revoke the stay. Appellants responded with a motion "to dismiss or in the alternative suspend or modify and/or stay" the injunction. These two motions are still pending before the district court.
 
 
 10
 We affirm the order of the district court granting the temporary injunction except as to American Commercial Lines, Inc. and Mac Towing, Inc., but remand the case for consideration of the motions now pending before the district court, and for further consideration of the motion of appellants to place time limits on the injunction (in accordance with Part IX of this opinion).
 
 
 11
 * The case is before this court on the appeal of American Commercial Lines, Inc. (ACL), American Commercial Barge Line Company (ACBL), Inland Tugs Co. (ITC) and Mac Towing, Inc. (Mac Towing). The four appellants sometimes are referred to collectively in this opinion as the "employer."
 
 
 12
 ACL is an intermediate holding company which owns all the stock of the other appellants. The parent corporation provides financial and administrative services to the other appellants. ACBL is the lead company of ACL's Inland Waterways Division Barging Group, and is engaged in providing towing services on the Mississippi and Ohio Rivers and their tributaries. ACBL operates, through ITC and Mac Towing, approximately 58 motor vessels. ACBL provides management for and controls the day-to-day labor relations of ITC and Mac Towing, as well as its own.
 
 
 13
 SIU has had two long standing collective bargaining agreements covering the employees assigned to vessels used by ITC and its predecessors.[1] One of the agreements covered deckhands, cooks and other "unlicensed" personnel; the other covered the engineers. At the time ACL purchased the assets of Mac Towing in August 1979, however, Mac Towing had an existing collective bargaining arrangement with another Union, the Inland Rivermen's Association (IRA), which was to be effective until 1982. After the purchase of Mac Towing, the obligations of its collective bargaining agreement with IRA were voluntarily assumed by the Employer.[2]
 
 
 14
 There were two collective bargaining agreements between SIU and each of appellants except Mac Towing. They provided, inter alia, that the employer would hire only through the SIU hiring hall except in certain situations in which the SIU could not provide enough available and qualified members to satisfy ITC's needs; and that ITC would provide "access to the property and vessels of the Company for the purposes of contacting the employees."
 
 
 15
 The basic dispute in this case centers upon these two provisions of the collective bargaining agreement. In granting the preliminary injunction, the district judge found that there was "reasonable cause to believe" that an unfair labor practice had been committed because the respondents had violated these two provisions of the agreement.
 
 
 16
 Two incidents and the consequences arising therefrom precipitated the asserted breaches of the agreement. One incident grew out of an action by the Board. In an August 1979 decision, Seafarers' International Union, Atlantic, Gulf, Lakes and Inland Waterways District, AFL-CIO (American Barge Line Co. et al.), 244 NLRB 99 (1979), the Board found that certain provisions of SIU Shipping Rules which provided for hiring hall referrals on the basis of seniority violated the National Labor Relations Act. The Shipping Rules are incorporated by reference in the collective bargaining agreement between SIU and ITC.
 
 
 17
 The second source of disagreement between SIU and the appellants involved the access to vessels provision of the collective bargaining agreement. Pursuant to this provision, SIU representatives boarded ITC vessels for a variety of reasons: to process employee grievances; to distribute literature; to hold meetings; to discuss the SIU with new employees; and to solicit new members.
 
 
 18
 In the summer of 1979, appellants became concerned about an apparent increase in the amount and frequency of the visits of SIU representatives to vessels.
 
 
 19
 In his Findings of Fact, Conclusions of Law and Memorandum Opinion, Judge Allen wrote:
 
 
 20
 The weight of the evidence is to the effect that the parties had a collective bargaining agreement which expired on December 31, 1979. That agreement was between the Seafarers International Union of North America, hereinafter SIU, and ACL and all of its subsidiaries except for Mac, which had a collective bargaining agreement with IRA. There were two bargaining units in each subsidiary company; the first consisted of engineers and assistant engineers who were known as the license bargaining division, and the other unit consisted of deckhands, cooks, trainee engineers, and tankermen. The total number of employees in the collective bargaining units was between 550 and 600.
 
 
 21
 The collective bargaining agreement provided that the company would allow duly authorized union representatives access to the property and vessels of the company for the purpose of contacting the employees. It also provided that the union representatives should be allowed such contact at any time, but that men at work should not be interfered with unless they were properly relieved, with the relief getting no extra compensation.
 
 
 22
 The union hiring hall provision, Section 2 of the contract, provided that the company would secure all of its personnel through the hiring hall of the union, subject to the proviso that if the union could not fill the vacancies in ample time to prevent delays in the departure of the companies' vessels, then the company could obtain employees from any available source, and should notify the union within 3 days after such hiring.
 
 
 23
 At some time prior to the expiration of the collective bargaining agreement, disputes arose between SIU and the respondents, with the exception of Mac, concerning both the access and the bargaining hall issues. The respondents took the position that SIU was abusing its right to access to the 58 boats which it and its subsidiaries operated on the Ohio and Mississippi Rivers and their tributaries. It, therefore, imposed certain conditions upon union representatives before they were allowed to board the vessels, and then proceeded to bar any access in October, 1979. In November, 1979, SIU filed suit in this District and obtained a temporary restraining order from Judge Thomas A. Ballantine, Jr., requiring respondents to allow union representative access to their vessels but denying injunctive relief as to the union hiring hall issue. Since December 31, 1979, it is undisputed that the respondents have not allowed any union representatives on the boats. Also, since that time no new collective bargaining agreement has been entered into between SIU and the respondents.
 
 
 24
 In late August, 1979, a provision in the shipping rules which pertains to hiring halls was found to be unlawful by the Seafarers Appeals Board which had jurisdiction over the matter. The particular provision which was found to be unlawful pertained to seniority. Since the decision by the Seafarers Appeal Board, the respondents have steadfastly refused to use the union hiring halls which had been established under prior collective bargaining agreements with SIU.
 
 
 25
 Shortly thereafter, and prior to expiration of the collective bargaining agreement, the Seafarers Appeal Board adopted the modified shipping rules which deleted the provision which had been found to be unlawful. There was a provision in the shipping rules themselves which partook of the nature of a savings clause, and which had the effect of requiring the parties to the rules to adhere to them upon deletion of any illegal provisions.
 
 
 26
 Although the respondents were notified that the offensive provision of the shipping rules had been deleted, they took the position that a clause contained in the collective bargaining agreement governed the situation, and that, therefore, the parties were required to negotiate new procedures with respect to the hiring hall agreement. Several conferences took place prior to the expiration of the collective bargaining agreement relative to the hiring hall issue but no agreement was reached. Also, the union at first demanded arbitration of that issue in late October 1979, and insisted on it until December 12, 1979, when Mr. Herbert Segal, attorney for the union, advised the respondents that the union now took the position that the matter was not subject to arbitration.
 
 
 27
 With regard to the access issue, respondents of course granted access in obedience to Judge Ballantine's order until the collective bargaining agreement expired. The respondents have requested arbitration as to the issue and a hearing has been tentatively scheduled on August 11, 1980 to determine both the union hiring hall and access issues.
 
 
 28
 SIU and the respondents, with the exception of Mac, had a provision in their collective bargaining agreement which, in essence, stated that in the event any provisions of the contract were found illegal by any administrative or judicial agency, they would be null and void, and under the agreement, the parties should negotiate new procedures. However, SIU and the respondent companies, except for Mac, were also parties to an agreement known as the "Shipping Rules," which provide that if a particular shipping rule is found unlawful, it does not invalidate the remainder of the rules.
 
 II
 
 29
 In Levine v. C & W Mining Co., 610 F.2d 432 (6th Cir. 1979), this court outlined the Congressional intent underlying § 10(j) of the National Labor Relations Act as amended, and the scope of this court's review of an order of a district court granting injunctive relief pursuant to § 10(j). Clearly, § 10(j) was added "to give the Board a means to preserve the status quo pending the completion of its regular procedures." Id. at 436. The injunctive relief contemplated in § 10(j) and its companion provision § 10(l ) was designed to be temporary, however, and should be only that relief which is "just and proper" under the circumstances in order to avoid frustration of the purposes of the National Labor Relations Act. Id. at 435. This is a matter left to the sound discretion of the district judge. Id.
 
 
 30
 Before a district court grants such relief as it deems just and proper, it must find that "there is reasonable cause to believe that unfair labor practices have been committed." Id. This court's review of the finding of reasonable cause by the district court is limited to whether that finding is clearly erroneous. Id. The scope of this court's review of a decision to grant a preliminary injunction by the district court under § 10(j) is narrow.
 
 III
 
 31
 The collective bargaining agreement between the parties provided that appellants would employ all of their personnel through the hiring hall of the Union unless the Union was unable to furnish suitable employees. Prior to September 1979 approximately 25% to 35% of appellants' jobs were filled by new hires referred from the Union's hiring hall. The hiring hall supplied from 20 to 40 employees in some months and more than 100 in others.
 
 
 32
 Referrals from the hiring hall were governed by the procedures set out in the SIU Shipping Rules, which were annexed as an appendix, incorporated by reference and repeated in Article I, Section 6, of the collective bargaining agreement.
 
 
 33
 As stated in Part I of this opinion, the Board in Seafarers International, 244 NLRB 99 (1979) held certain seniority provisions in the SIU Shipping Rules to be invalid. Appellants thereupon ordered their managers to cease using the SIU Union Hall.
 
 
 34
 The appellants assert that the district judge was clearly erroneous in his determination that there was reasonable cause to believe that they violated § 8(a)(5) of the National Labor Relations Act by continuing to refuse to use the SIU hiring hall. They argue that when the Board found the seniority rules contained in the hiring hall provisions to be unlawful, Article V, § 3A of the collective bargaining agreement,[3] required them to stop using the hiring hall until the provisions were modified by arbitration. Therefore, they contend that rather than unilaterally modifying the contract, they followed the letter of the agreement.
 
 
 35
 Rule 9 of the Shipping Rules provides as follows:
 
 
 36
 The Seafarers Appeals Board may amend these Shipping Rules at any time and in any manner consistent with the requirements of applicable law and of outstanding collective bargaining agreements between the parties.
 
 
 37
 The Seafarers Appeals Board amended the Shipping Rules on October 1, 1979, by eliminating the provisions found unlawful by the Board in Seafarers International, supra, 244 NLRB 99. The seniority rules for hiring hall referrals thereafter were "no longer in conflict with law" and were "restored to full force and effect" under the express language of the collective bargaining agreement relied upon by appellants, see footnote 3, supra.
 
 
 38
 We hold that the determination of the district court that there was reasonable cause to believe the appellants had committed an unfair labor practice by refusing to use the SIU hiring hall even after the unlawful portions of the seniority provisions were deleted is not clearly erroneous and rests upon a reasonable interpretation of the collective bargaining agreement.
 
 
 39
 When the collective bargaining agreement expired on December 31, 1979, appellants took the position that they had no further obligations under the hiring hall and access to vessels provisions.
 
 
 40
 It is well settled that a hiring hall arrangement governing the referral and hiring of bargaining unit employees is a mandatory subject of bargaining. NLRB v. Houston Chapter, Associated General Contractors, 349 F.2d 449 (5th Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). The district court correctly held that appellants' refusal to use the hiring hall was not cured by termination of the contract. Terms and conditions of employment embodied in a collective bargaining agreement survive the expiration of the contract and may not be altered unilaterally without first bargaining to agreement or good faith impasse. NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); NLRB v. Frontier Homes Corp., 371 F.2d 974, 979 (8th Cir. 1967).
 
 IV
 
 41
 Appellants next contend that the district judge was clearly erroneous in finding there was reasonable cause to believe that the appellants violated the National Labor Relations Act by denying SIU access to appellants' vessels. They distinguish between two types of access to their vessels by SIU representatives. Appellants contend that they did not deny SIU representatives access for purposes of administering and enforcing the contract. They admit that they denied SIU access for the purposes of engaging in organizational campaigning, but assert that denying access for organizing was justified under the circumstances.
 
 
 42
 Relying upon NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the appellants assert that they have a legal right to deny union organizers access to their property for the purpose of engaging in an organizational campaign, provided they do not discriminate.
 
 
 43
 The district court rejected the arguments of appellants for two reasons. First, the district judge found that after December 31, 1979, the day the collective bargaining agreement expired, the appellants refused to allow SIU representatives access for any reason, even for the purpose of administering and enforcing the collective bargaining agreement. We conclude that this finding is not clearly erroneous.
 
 
 44
 Second, the district judge found the rule announced in Babcock & Wilcox, supra, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975, to be inapplicable. In Babcock & Wilcox, and its progeny, the union had no existing contractual right to access as a result of collective bargaining negotiations. In this case, the SIU had such a contractual right.[4] Since the district court found that the right to access is a proper subject for collective bargaining, it held that the right contained in the collective bargaining agreement continued to be a term of employment after the collective bargaining agreement had expired, because such a unilateral change in the agreement was not comprehended in the collective bargaining negotiations between the appellants and the SIU.
 
 
 45
 We agree with the district court that Babcock & Wilcox, supra, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975, and its progeny, are distinguishable from the present case. Appellants waived their property rights by entering into a collective bargaining agreement which allows SIU representatives "to contact the employees at anytime...." We hold that the district court was not clearly erroneous in finding that there was reasonable cause to believe that appellants committed an unfair labor practice in denying SIU representatives access to appellants' vessels.
 
 V
 
 46
 ACL argues that even if there was reasonable cause to believe that its subsidiaries committed unfair labor practices, its motion to dismiss should have been granted. ACL asserts that it merely owns ACBL and ITC; it does not control the day-to-day operations of its subsidiaries, and it has never been a signatory to a collective bargaining agreement with the SIU. ACL contends that it does not exercise sufficient actual control over its subsidiaries to justify a finding that ACL and its barging subsidiaries constitute a single integrated employer. It is the position of ACL that it is not a proper party to these proceedings.
 
 
 47
 In determining whether separate business entities constitute a single integrated employer "the controlling criteria ... are interrelation of operations, common management, centralized control of labor relations and common ownership." Radio & Television Union v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). The single employer determination depends upon the particular facts and circumstances of each case, and consequently the federal courts have varied somewhat in their application of the above criteria. Compare Soule Glass and Glazing Co. v. NLRB, 652 F.2d 1055, 1075 (1st Cir. 1981) with Royal Typewriter Co. v. NLRB, 533 F.2d 1030, 1043 (8th Cir. 1976), and Sakrete of Northern Cal., Inc. v. NLRB, 332 F.2d 902, 905-08 (9th Cir. 1964), cert. denied, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965).
 
 
 48
 In each of the cases cited in the preceding paragraph, the court found either actual control of labor relations (see Soule and Sakrete ), or the means to exercise control over labor policies coupled with a course of conduct encouraging such belief (see Royal Typewriter ).
 
 
 49
 In S. S. Kresge Co. v. N. L. R. B., 416 F.2d 1225, 1230 (6th Cir. 1969), this court said:
 
 
 50
 We agree with the assertion that control of the essential elements of labor relations is a prerequisite to the existence of a joint-employer relationship.
 
 
 51
 The Board has found single employer status without evidence of control over labor relations when the extent of interrelated operation and common management was substantial. See Local 627, Operating Engineers v. NLRB, 518 F.2d 1040, 1045-46 (D.C.Cir.1975). In the present case, however, we find no evidence in the record that ACL controls the labor relations of its subsidiaries or that the extent of interrelated operation and common management is substantial.
 
 
 52
 We, therefore, conclude that the record does not support the issuance of the injunction as to ACL and that the district court erred in overruling ACL's motion to dismiss as to it.
 
 VI
 
 53
 Appellants assert that the district court erred in issuing the injunction because it is not "just and proper." Our standard of review of this issue is whether the issuance of the injunction constituted an abuse of discretion. Levine, supra, 610 F.2d at 435.
 
 
 54
 The appellants argue that the injunction was not just and proper for two reasons. First, they assert that National Labor Policy contains a preference for resolution of disputes by arbitration rather than through the court system. See Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Appellants point out that the NLRB itself has formulated a policy of deferral to arbitration proceedings. Dubo Manufacturing Corp., 142 NLRB 431 (1963). Appellants argue that the district judge should have required the parties to resolve their differences under the arbitration provisions of the collective bargaining agreement.
 
 
 55
 The arbitration argument assumes that the parties voluntarily have submitted their differences to arbitration. There has been no such voluntary submission of the two main issues presented on this appeal. Although some matters have been submitted to arbitration, SIU has resisted submitting to arbitration the contents of the hiring hall provisions of the collective bargaining agreement. Likewise the Union has opposed submitting to arbitration the question whether appellants can abandon completely the vessel access provisions of the agreement. The Board states that its policy is to defer to arbitration only in those cases where the charging party voluntarily has elected to submit to arbitration all matters related to the unfair labor practice in question.
 
 
 56
 The district judge rejected the arbitration argument with this language:
 
 
 57
 Since administrative boards, like courts, have the right as long as it is not contrary to any statute or the Constitution to change their viewpoint with reference to policy matters such as deference to arbitration, and since respondents are unable to point to any violation of a statute or constitutional right by reason of a change of policy, the Court must conclude that the Board has not violated its own policy by filing this action, and further that no decision having been reached under the arbitration process, it has the right to pursue its remedies in this Court rather than be required to defer to the arbitration procedures.
 
 
 58
 Appellants further contend that there is no showing that SIU would be harmed irreparably by their refusal to use the SIU hiring hall or to permit SIU representatives to have access to their vessels. This argument does not convince this court that the district judge abused his discretion in granting the injunction. The hiring hall and vessel access provisions of the agreement were important rights which the Union has acquired through collective bargaining.
 
 
 59
 In determining whether injunctive relief under § 10(j) of the Act is just and proper, the principal consideration is whether, under the circumstances of the case, judicial action is in the public interest. Gottfried v. Mayco Plastics Inc., 472 F.Supp. 1161, 1164 (E.D.Mich.1979), aff'd, 615 F.2d 1360 (6th Cir. 1980); Eisenberg v. Holland Rantos Co., 583 F.2d 100, 103 (3rd Cir. 1978).
 
 
 60
 Interim judicial relief is warranted whenever "the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless." In such cases "(p)reservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board." Angle v. Sacks, 382 F.2d 655, 660 (10th Cir. 1967), accord, Levine supra, 610 F.2d at 637.
 
 VII
 
 61
 In further support of the issuance of the injunction, the district judge made the following findings:
 
 
 62
 With regard to the issues other than those of access and the union hiring hall, the evidence reveals the following:
 
 
 63
 Witness Carter described two captains as listening in on conversations held between Carter, a union representative, and employees of his union on the vessels.
 
 
 64
 Witness Glies related that Captain Rowan said that the union was "no good" and that he was put off the boat because of his union membership. Apparently this matter was referred to arbitration and the arbitrator held for Glies and directed that his wages be paid to him.
 
 
 65
 Witness Stinson described being put off the boat by a captain who was hostile to the union. However, there was evidence to the effect that some of the members of the crew were taking drugs, and that other legitimate reasons might have existed for the banishment of Stinson. This matter is in arbitration.
 
 
 66
 Witness McGregor described an occurrence where a captain sat in on a union meeting on the vessel during its entire period, although McGregor made the admission that he never asked the captain to leave because he was afraid that controversy might ensue.
 
 
 67
 Witnesses Reynolds and Hallmark described two captains, one of whom said that it was his duty to make it "tough" on members of the union because of the collective bargaining agreement coming up, and another captain named Swischer who called the union a "rip-off."
 
 
 68
 Finally, there was a case of a union member named Willins who was put off a boat after 18 days with no reason given. His case is now in arbitration.
 
 
 69
 There was testimony also to the effect that one employee was summarily ejected from a vessel because he was a member of the SIU and was aboard the "Bill Carneal" which was owned by Mac which only employed IRA members. There was testimony also that on two occasions employees of the respondent encouraged members of SIU to join IRA, although it appeared that on one occasion representation was made in connection with the employment of the witness as a new hire on board a Mac boat.
 
 
 70
 We conclude that petitioner is entitled to an injunction preventing the interference by supervisory employees of the respondents such as captains with the meeting of the employees and their union representatives on board vessels.
 
 VIII
 
 71
 We conclude that the district court erred in extending the access and hiring hall provisions of the injunction to Mac Towing, Inc., which had an existing collective bargaining agreement with another Union, Inland Rivermen's Association (IRA). In its brief the National Labor Relations Board concedes: "The Board would not take issue with an order by this court deleting MAC from the access and hiring hall provisions of the injunction."
 
 
 72
 Accordingly, the injunction is modified by making the access and hiring hall provisions inapplicable to Mac Towing, Inc., but that the other provisions of the injunction shall remain in effect as to Mac Towing, Inc.
 
 IX
 
 73
 Finally appellants contend that the district court erred in refusing to modify the injunction to provide that it would expire after a specific time from the date it was entered, rather than expiring upon final disposition of the proceedings before the Board. They argue that the NLRB proceedings are complex and time consuming, and there is the danger that the parties positions will become "fossilized", thereby making this temporary injunction in reality a final disposition.[5]
 
 
 74
 Appellants urge this court to limit the duration of the injunction, relying on Kaynard v. Mego Corp., 633 F.2d 1026 (2d Cir. 1980); and Eisenberg v. Hartz Mountain Corporation, 519 F.2d 138, 144 (3rd Cir. 1975), or instruct the district court to consider placing time limits on the injunction. Dawidoff v. Minneapolis Bldg. & Const. T. C., 550 F.2d 407, 414 (8th Cir. 1977).
 
 
 75
 This court recognized in Levine v. C & W Mining Co., supra, 610 F.2d 432, 437 (6th Cir. 1979), that there is a danger that "a temporary injunction, entered without reaching the ultimate merits of a dispute may become, in effect, a final disposition of the controversy," quoting Hartz Mountain, supra, 519 F.2d at 144. In Levine, supra, 610 F.2d at 437, we required the Board "to expedite its administrative action after obtaining a temporary injunction."
 
 
 76
 Although we recognize that it is the stated position of the Board to expedite proceedings, see 29 C.F.R. § 102.94, we direct the Board to proceed with the processing of the underlying proceedings in the most expeditious manner possible.
 
 
 77
 Further, upon remand, we direct the district court to consider the motion to place time limits on the injunction. In deciding this issue, the district court should take into consideration the particular circumstances of this case and especially the time required for the NLRB to resolve the underlying proceedings if the case were handled as expeditiously as possible. Upon remand the district court also will consider other motions now pending before it.
 
 
 78
 All the other contentions of appellants are found without merit.
 
 
 79
 We affirm the district court and find that the initial injunction was justified under the National Labor Relations Act, except as to ACL for the reasons stated in Part V of this opinion, and except as modified as to Mac Towing, Inc. The injunction is vacated as to ACL.
 
 
 80
 No costs are taxed. Each party will bear its own costs on this appeal.
 
 
 
 [1]
 Before May 1980, the ITC vessels were assigned to ITC and three other subsidiaries. After a corporate merger in April 1980, all of the vessels in the Barging Group, except those assigned to Mac Towing, were assigned to ITC. The SIU had collective bargaining agreements with ITC and the three other subsidiaries which were essentially identical to the most recent agreements between SIU and ITC
 
 
 [2]
 The SIU filed a petition with the NLRB on October 31, 1979, in which it sought to represent all employees of The Barging Group, including Mac Towing, on a fleet wide basis. Hearings were held in December 1979. The Board took the case for consideration in December 1981
 
 
 [3]
 Art. V, § 3A of the collective bargaining agreement provides as follows:
 If any provision or the enforcement or performance of any provision of this Agreement is or shall at any time be contrary to law, then such provision shall not be applicable or enforced or performed, except to the extent permitted by law. If at any time thereafter such provision or its enforcement or performance shall no longer conflict with the law, then it shall be deemed restored in full force and effect as if it has never been in conflict with the law.
 
 
 [4]
 Art. V, § 4 of the collective bargaining agreement provides as follows:
 The Company agrees to allow duly authorized union representatives access to the property and vessels of the Company for the purpose of contacting the employees.
 Said duly designated Union representatives shall be required to show a union identification card upon request.
 Representatives of the Union shall be allowed to contact the employees at anytime, but men at work shall not be interfered with unless said men are properly relieved, the relief getting no extra compensation.
 
 
 [5]
 At oral argument, counsel for the appellants stated that the related proceedings before the Administrative Law Judge began on May 5, 1981, and ended on January 15, 1982, and that the ALJ stated on the record that he would issue no decision until the underlying representation case has been resolved. The ALJ was referring to the petition filed with the Board on October 31, 1979, in which SIU seeks to represent all employees of the Barging Group, including the employees of Mac Towing, Inc. on a fleet wide basis. Since the Board took over the representation case in December 1981, counsel for the appellants estimated that it would be another three years before the controversy underlying this dispute is resolved by the NLRB. Counsel for the Board did not dispute the accuracy of this estimate, but asserted that the case would be expedited to the extent "allowed by due process."